UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CLIFFS MINING COMPANY<br>200 Public Square, Suite 3300<br>Cleveland, Ohio 44114-2315 | ) CASE NO.: 2:21-CV-968<br>)<br>) JUDGE |
| Plaintiff, | )<br>) |
| v. | )<br>)<br>) |
| EAST GREENFIELD INVESTORS, LLC<br>c/o Lawrence Fromelius<br>12228 New Avenue, Building B<br>Lemont, Illinois 60439 | )<br>)<br>)<br>) |
| *also serve* | ) **COMPLAINT FOR**<br>) **DECLARATORY RELIEF**<br>) |
| EAST GREENFIELD INVESTORS, LLC<br>c/o Lawrence Fromelius<br>5611 Walnut Avenue<br>Downers Grove, Illinois 60516 | )<br>)<br>)<br>) |
| *also serve* | )<br>) |
| EAST GREENFIELD INVESTORS, LLC<br>c/o Lawrence Fromelius<br>1207 Lisle Place<br>Lisle, Illinois 60532 | )<br>)<br>)<br>) |
| and | )<br>) |
| LAWRENCE FROMELIUS<br>1207 Lisle Place<br>Lisle, Illinois 60532 | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

Plaintiff Cliffs Mining Company ("**Cliffs**"), for its Complaint for Declaratory Relief

("**Complaint**") against Defendants East Greenfield Investors, LLC ("**EGI**") and Lawrence

Fromelius ("**Fromelius**"), hereby states as follows:

## SUMMARY OF THE ACTION

1.      This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 concerning Cliffs' right and ability to utilize $2,374,020.93 in escrowed funds for the purpose of performing environmental remediation activities at a United States Environmental Protection Agency ("**EPA**") Brownfield site and adjacent waterway known as the former Milwaukee Solvay Coke & Gas Site (the "**Site**") located at 311 East Greenfield Avenue, Milwaukee, Wisconsin on the banks of the Kinnickinnic River.

2.      In contravention of a certain 2006 Escrow Agreement and EGI/Cliffs Settlement Agreement (both further defined and described below), EGI and Fromelius have wrongfully and without basis objected to the disbursement of the escrowed funds and EGI has recently commenced an arbitration to address the limited issue of whether the subject disbursement was consistent with the 2006 Escrow Agreement, as amended.  However, because EGI is a dissolved corporation with no assets, it has no ability to perform as required by the 2006 Escrow Agreement, including the payment of arbitration fees and Cliffs' attorneys' fees in the event Cliffs is the prevailing party.  Additionally,  EGI's demand for arbitration is in breach of the agreement as EGI's attempted objection was not timely.

3.      Unlike EGI whose "sole remedy" is to commence the narrow arbitration proceeding referenced above, Cliffs has the right and ability to pursue the declaratory relief sought herein and can only adequately protect its rights and vindicate the public's interests in furthering the remediation of a contaminated site if promptly afforded the relief sought herein.

## PARTIES, JURISDICTION AND VENUE

4.      Plaintiff Cliffs is a Delaware corporation with its principal place of business located in Cleveland, Ohio 44114-2315.

2

5.  Defendant EGI – prior to its involuntary dissolution by the Illinois Secretary of State on April 29, 2019 – was an Illinois limited liability company with its principal place of business located in either Lemont, Downers Grove or Lisle, Illinois or Milwaukee, Wisconsin. EGI currently has no registered statutory agent for purposes of service of process.

6.  Defendant EGI, upon information and belief (including a review of EGI's Operating Agreement), is a single-member limited liability company, whose sole and managing member is Defendant Fromelius.  There are no additional members of Defendant EGI, on information and belief, other than Defendant Fromelius.

7.  Defendant Fromelius is a citizen of the State of Illinois whose principal resident address, upon information and belief, is 1207 Lisle Place, Lisle, Illinois.

8.  To the extent that EGI has been administratively dissolved by the Illinois Secretary of State, and Fromelius is and/or was EGI's sole and managing member, on information and belief, Fromelius claims and/or purports, or may claim and/or purport, to exercise any rights or obligations, if any, or control any assets and/or liabilities, if any, of EGI. Furthermore, pursuant to the EGI/Cliffs Settlement Agreement (defined and discussed below), Fromelius, on information and belief, claims and/or may claim an interest as an actual and/or potential beneficial owner to certain of the escrowed funds.

9.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity among the parties and the amount in controversy exceeds $75,000.

10.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as this Court lies in the judicial district where a substantial part of the events or omissions giving rise to Cliffs' claims occurred and a substantial part of the property that is the subject of the action is located.

3

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### A. The Site Owners' Potential Liability for Environmental Remediation Costs.

11.     From approximately 1973 to 1983, a predecessor of Cliffs operated a plant located at the Site, which predecessor Cliffs acquired in 1986.

12.     Cliffs owned and operated the Site from approximately 1986 to 2003.

13.     In early 2003, Cliffs sold the Site to Golden Marina Causeway, LLC ("**Golden Marina**") which, upon information and belief, continued to own and operate the site until early 2006.

14.     Golden Marina is and/or was at one time wholly-owned by EGI.

15.     On or about March 30, 2006, Cliffs, EGI, American Natural Resources, Maxus Energy Corporation, Wisconsin Electric Power Company and Wisconsin Gas LLC (d/b/a WE Energies) (collectively, the "**PRPs**") received a Special Notice Letter (the "**SNL**") from the EPA regarding a needed environmental remediation at the Site.  The EPA contemplated a Remedial Investigation/Feasibility Study ("**RI/FS**") for the Site under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.* ("**CERCLA**").  The SNL stated that the PRPs were considered Potentially Responsible Parties under CERCLA.

16.     As a result of the SNL, the PRPs formed a cooperative association to jointly defend against any action by the EPA and share information without waiving certain privileges, doctrines or other rules of protection against disclosure.

17.     In furtherance of their agreement, in or about December 2006 and January 2007 the PRPs entered into a certain agreement known as the "Former Milwaukee Solvay Coke & Gas Site Confidential Joint Participation and Defense Agreement – RI/FS (the "**RI/FS Agreement**") pursuant to which the parties agreed to cooperatively participate in, and jointly fund, the RI/FS.

4

Due to certain confidentiality restrictions, a copy of the RI/FS Agreement is not attached to the Complaint but can be provided under seal as appropriate at a later date.

18.     On or about January 26, 2007, the PRPs and the EPA subsequently entered into an Administrative Settlement Agreement and Order on Consent ("**ASAOC**") which required the completion of the RI/FS for the Site, which would determine the nature and extent of contamination and propose remedial options for the site. The EPA then selects the specific remedy by issuing a Record on Decision. Once the remedy is selected, the PRPs may enter into a further ASAOC to undertake the remedy or enter into a Consent Decree in a court action for that purpose.

### B.  The WE Energies Litigation and Settlement.

19.     While the RI/FS was being implemented and prior to its completion, the Site's then-owner filed a petition for relief pursuant to the United States Bankruptcy Code, 11 U.S.C §§ 101-1532.

20.     Wisconsin Electric Power Company and Wisconsin Gas LLC (d/b/a WE Energies) (collectively, "**WE Energies**") – one of the original PRPs – then proceeded to purchase the Site out of Golden Marina's bankruptcy case.

21.     Following WE Energies' purchase of the Site, unbeknownst to Cliffs, WE Energies unilaterally approached EPA to suspend all further work under the RI/FS Agreement and ASAOC and proceeded to individually enter into a second, and separate, Administrative Settlement Agreement and Order on Consent (the "**EE/CA ASAOC**"). "EE/CA" stands for "Engineering Evaluation/Cost Analysis" and is similar to a RI/FS. *See* Guidance on Conducting Non-Time-Critical Removal Actions Under CERCLA, EPA540-R-057 (Aug. 1993).

22.     The EE/CA ASAOC between WE Energies and EPA contemplated a different remedial approach compared to what was originally contemplated as part of the RI/FS ASAOC.

23.     As a result of its concerns regarding the EE/CA ASAOC, on April 12, 2018, Cliffs commenced an action for monetary damages and declaratory relief against WE Energies in the United States District Court for the District of Wisconsin in an action styled *Cliffs Mining Company v. Wisconsin Electric Power Company, et al.*, Case No. 2:18cv00581 (the "**WE Energies Action**").

24.     To resolve the WE Energies Action, on or about June 12, 2019, Cliffs and WE Energies entered into a certain "Release and Settlement Agreement" obligating the parties to mediate the allocation of CERCLA liability amongst them for work to be performed by WE Energies under the EE/CA ASAOC, and further obligating Cliffs to cooperate and not interfere with WE Energies' performance of the remediation of the Site as required of WE Energies under the EE/CA ASAOC.  Due to certain confidentiality restrictions, a copy of the Release and Settlement Agreement is not attached to the Complaint but can be provided under seal at a later date upon entry of an appropriate sealing order.

25.     Mediation between Cliffs and WE Energies commenced in late 2020 over several sessions extending into 2021 before Honorable Judge Michael P. Mahoney (Ret.), formerly sitting in the United States District Court for the Northern District of Illinois.  The mediation successfully concluded and was memorialized on or about April 30, 2021, when Cliffs and WE Energies entered into a certain "Settlement Agreement Between Wisconsin Electric Power Company, Wisconsin Gas LLC and Cliffs Mining Company for the Milwaukee Solvay Coke and Gas Site (the "**WE Energies Settlement**").  Due to certain confidentiality restrictions, a copy of the WE Energies Settlement is not attached to the Complaint but can be provided under seal at a later date upon entry of an appropriate sealing order.

6

26.     In mediation, WE Energies asserted that it had expended in excess of $30,000,000 in the performance of the EE/CA ASAOC and supplied documentation supporting its expenditures.  Because CERCLA Section 113 authorizes a party such as WE Energies to recover in contribution against a party such as Cliffs, the mediation focused on what Cliffs must pay to WE Energies as Cliffs' "fair share" of WE Energies' incurred remediation costs.

27.     Pursuant to the WE Energies Settlement, and in furtherance of the remediation and indemnification obligations undertaken by WE Energies under the EE/CA ASAOC, Cliffs agreed to pay WE Energies a settlement amount that is confidential and set forth in the WE Energies Settlement but is substantially in excess of the $2,374,020.93 in escrowed funds, plus certain additional consideration.  *See* WE Energies Settlement at Sections 3.1, 3.2 and 4.

### C.     The 2006 Escrow Agreement.

28.     On or about August 31, 2006, Cliffs, "East Greenfield LLC, a[n] Illinois limited liability company . . . as assignee and successor to Kinnickinninc Development Group LLC, a Wisconsin limited liability company" and Chicago Title Insurance Company ("**CTIC**" or "**Escrow Agent**") entered into a certain "Escrow Agreement" (the "**2006 Escrow Agreement**") concerning the escrow and use of certain funds for the environmental remediation efforts contemplated by the RI/FS and/or RI/FS ASAOC.  A copy of the 2006 Escrow Agreement is attached hereto as **Exhibit A**.

29.     On information and belief based, *inter alia*, on a review of the Illinois Secretary of State's website, no entity identified as "East Greenfield LLC" was ever incorporated in Illinois or elsewhere and simply does not exist; rather, this appears to be a typographical error in referring to "East Greenfield Investors, LLC" *i.e*., EGI.  In fact, the signatory to the 2006 Escrow Agreement is "East Greenfield Investors, LLC."

7

30.     The 2006 Escrow Agreement was intended and designed, in part, to address and resolve certain rights, obligations and/or disputes between EGI's predecessor, Kinnickinnic Development Group LLC ("**KK Group**") arising under a certain "Liability Transfer and Indemnity Agreement" (the "**Transfer Agreement**") whereby KK Group generally agreed to the "assumption of certain liabilities of Cliffs relating to environmental conditions on the [Site] and related indemnification, and the deposit in escrow of $4,000,000 and the acquisition of a policy of insurance covering the costs of investigation and remediation relating to the [Site]." *See* 2006 Escrow Agreement, Recitals.

31.     More specifically, the 2006 Escrow Agreement acknowledged "the parties understand that an administrative order and/or settlement agreement requiring the performance of an [RI/FS] is forthcoming from the [EPA] that will require specific activities designed to determine the nature and extent of contamination, to identify and evaluate remedial alternatives and to recover certain response and oversight costs incurred by the EPA." *See* 2006 Escrow Agreement, Recitals.

32.     Pursuant to the 2006 Escrow Agreement, EGI agreed, among other things, to "deposit[] with the Escrow Agent the sum of $3,000,000 to be held in escrow by the Escrow Agent, and [] to deposit an additional $1,500,000 (the "additional funds") into the Escrow Account on or before August 31, 2006." *See* 2006 Escrow Agreement, Section 1(a).

33.     Pursuant to the 2006 Escrow Agreement, EGI also agreed, among other things, to "pay directly from its own funds the costs of the RI/FS settlement negotiations with the U.S. EPA attributable to Cliffs under the terms of a verbal agreement entered into with the other [PRPs] participating in said negotiations that are incurred prior to the execution of this agreement and the funding of the Escrow Account . . . []; to the extent it makes the said deposit and makes

other such payments ***with the prior written consent of Cliffs***, it may credit the said deposit and such other payments against its obligation to contribute the additional funds." *See* 2006 Escrow Agreement, Section 1(b) (bold italics emphasis added).

34.     The 2006 Escrow Agreement further expressly identified the purpose of the agreement: "The purpose of this Escrow Agreement is ***to establish a fund beyond the dominion and control of [EGI]*** which is comprised of cash and cash equivalent investments that, upon payment to the Escrow Agent, are no longer assets of [EGI]. ***The funds so held*** by the Escrow Agent ***shall be used solely to pay of [sic] the liabilities and expenses of Cliffs assumed by [EGI, as successor to KK Group] under paragraph 4 of the Transfer Agreement*** and the Closing Documents on the terms and subject to the conditions provided in this Escrow Agreement. Accordingly, the only interest [EGI] has with respect to the funds held under this Escrow Agreement is in . . . the remaining funds, if any, held by the Escrow Agent upon the receipt by Cliffs and [EGI] of a Closure Letter." *See* 2006 Escrow Agreement, Section 1(f)(i) (bold italics emphasis added).

35.     Section 3 of the 2006 Escrow Agreement governed "Disbursement of Escrow Account," governing generally the procedure for disbursements from the escrow account and dispute resolution procedures. While Section 3 of the 2006 Escrow Agreement may be reviewed in full at Exhibit A, it is not repeated or summarized herein at length due to the fact that it was expressly "revoked and deleted" and replaced in the EGI/Cliffs Settlement Agreement (defined and discussed below).

36.     The 2006 Escrow Agreement is governed by Wisconsin law. *See* 2006 Escrow Agreement, Section 10.

**D. The EGI/Cliffs Settlement Agreement.**

37.     In the ensuing years following execution of the 2006 Escrow Agreement, beginning in mid-2015 and continuing into early 2016, each of Golden Marina, Fromelius, individually, and two Golden Marina/Fromelius-affiliated entities, the Lawrence D. Fromelius Trust U/T/D dated 12/22/1995 (the "**Fromelius Trust**") and L. Fromelius Investment Properties, LLC ("**Fromelius LLC**") (collectively, the "**Debtors**") each proceeded to file Chapter 11 petitions for relief, pursuant to which each remained a debtor in possession. *See* United States Bankruptcy Court for the Northern District of Illinois, Case Nos. 15-22373, 15-22943 and 16-03587 (collectively, the "**Fromelius Bankruptcy Actions**").

38.     As part of the Fromelius Bankruptcy Actions, the Debtors sought to enter into a settlement agreement with a certain creditor – the Ann Marie Barry Trust dated March 24, 2003 (the "**Barry Trust**") – pursuant to which the Debtors sought to subordinate a senior mortgage on the Site held by EGI (and, therefore, controlled by Fromelius) to a junior mortgage held by the Barry Trust without providing EGI (and, by extension, Cliffs) any consideration.

39.     Ann Marie Berry is Fromelius' sister, and the Barry Trust is and/or was the holder of an $8.5 million promissory note made by Fromelius and/or his affiliates that is and/or was secured, in part, by a mortgage on the Site and other property owned by Fromelius LLC.

40.     Upon learning of the proposed Debtors-Barry Trust settlement, Cliffs promptly objected to the settlement and commenced an involuntary Chapter 7 bankruptcy proceeding against EGI on May 26, 2017. *See In re: East Greenfield Investors, LLC,* United States Bankruptcy Court, Northern District of Illinois, Case No. 17-16364 (the "**EGI Bankruptcy**").

41.     Within a few months of commencing the EGI Bankruptcy, on or about August 31, 2017, Cliffs and EGI (and CTIC, to the limited extent of its involvement with the related 2006

Escrow Agreement) entered into a certain "**EGI/Cliffs Settlement Agreement**". A copy of the EGI/Cliffs Settlement Agreement is attached as **Exhibit B**.

42. At its core, the EGI/Cliffs Settlement Agreement sought to update and restate the respective rights and obligations (including indemnity obligations) due and owing between EGI and Cliffs with respect to any Site and adjacent waterway environmental remediation responsibilities originally contemplated in the 2006 Escrow Agreement.

43. Accordingly, in the EGI/Cliffs Settlement Agreement, EGI agreed, among other things, that "Cliffs shall retain the right to use, or draw upon the (a) funds contained in the Escrow Account and (b) any proceeds recovered under any insurance policies . . . presently in existence covering EGI, Golden Marina, Cliffs or any of its affiliates that may relate to the Indemnified Claims, the Golden Marina Property or Cliffs or Golden Marina's status as a [PRP] relating to the Golden Marina Property (together, "Cliffs' Environmental Remediation Obligations."). *See* EGI/Cliffs Settlement Agreement at Section 2.2.

44. Pursuant to the EGI/Cliffs Settlement Agreement, EGI assigned and transferred to Cliffs "all rights, liabilities, obligations, title and interests EGI may have under . . . the [RI/FS Agreement]. In particular, EGI assigns all of its rights to vote as a member under the [RI/FS Agreement]. Cliffs shall use all commercially reasonable efforts and take all reasonable actions to relieve EGI of any further obligations under the [RI/FS Agreement]." *See* EGI/Cliffs Settlement Agreement at Section 4.

45. As part of the EGI/Cliffs Settlement Agreement, the parties also agreed to amend the 2006 Escrow Agreement. To wit, in pertinent part, "EGI and Cliffs hereby agree that . . . the [2006 Escrow Agreement] is hereby amended as follows: [Section 6.1] The purpose of the Escrow Agreement as expressed in paragraph (f)(i) of Section 1 of the Escrow Agreement shall

12911346.1

continue and, subject to the amendments set forth below, payments shall be made from the funds held in escrow thereunder only as provided therein. [Section 6.2] The provisions of Section 3 of the Escrow Agreement are hereby revoked and deleted. In lieu of those provisions there is hereby substituted a new Section 3 attached hereto as Exhibit A." *See* EGI/Cliffs Settlement Agreement at Section 6; Paragraphs 6.1, 6.2 and 6.3, *supra*.

46. In turn, Exhibit A to the EGI/Cliffs Settlement Agreement – governing "Disbursement of Escrow Account" – provides in pertinent part for Section 3:

(a) Prior to the completion of the requirements of the RI/FS settlement agreement, the only permissible disbursements shall be to (i) the Escrow Agent in payment of its fees and charges hereunder; (ii) providers of services performing the requirements of the RI/FS settlement agreement and/or order and the work plan approved by the EPA for the performance of the RI/FS ("RI/FS Services") in payment for the performance of those services, (iii) providers of services performing remedial activities required or otherwise approved or authorized by EPA in payment for the performance of such services; (iv) payments to EPA of costs, including but not limited to any interest thereon, and monetary penalties, under the terms of any EPA or Wisconsin Department of Natural Resources settlement agreement or order; and (v) payments to any trust or escrow account established under and pursuant to the requirements of any group participation agreement entered into by East Greenfield with other potentially responsible parties relating to the RI/FS or to any remedial activities to be performed pursuant to any future settlement agreement with or order issued by the EPA relating to the remediation of the property. [….]

(b) After the completion of the requirements of the RI/FS settlement agreement, additional amounts may be paid from the escrowed funds, but only for the payment or reimbursement of liabilities and expenses of Cliffs that had been assumed by [EGI] under Paragraph 4 of the Transfer Agreement and the Closing Documents or would constitute performance of the indemnity obligations that [EGI] has undertaken as set forth in Paragraph 5 of the Transfer Agreement and the Closing Documents.

47. Exhibit A to the EGI/Cliffs Settlement Agreement further provides in pertinent part for Section 3:

12

(c)     Cliffs shall initiate any request for each expenditure meeting the requirements of subsection (a) or (b) by written notice to the Escrow Agent.  Cliffs shall also give EGI prompt notice of any such request. Upon receipt of Cliffs' request for payment, the Escrow Agent shall promptly pay the requested funds as set forth in any request by Cliffs. ***EGI may initiate an objection to the expenditure, but only by giving written notice to Cliffs within thirty (30) days after notice from Cliffs of such request***.  However, no objection by EGI shall affect the obligation of the Escrow Agent to make prompt payment pursuant to Cliffs' request for payment, nor shall EGI hinder or delay such payment.  If Cliffs does not, within thirty (30) days of such objection restore the amount of such expenditure to the escrow, EGI may commence an arbitration within thirty (30) days after the expiration of the period in which Cliffs may restore the expenditure of the escrowed funds . . . Arbitration shall be the sole remedy ***of EGI*** hereunder; provided that this clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction. ***The arbitration award shall determine only whether the expenditure in question is consistent with the provisions of (a) or (b) above***, provided that the arbitrator shall also, in the award, require that all of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party be paid by the non-prevailing party.

(bold, italics and underline emphasis added).

48.     Accordingly, Section 3 of the 2006 Escrow Agreement, as amended and superseded by Exhibit A to the EGI/Cliffs Settlement Agreement, places no restrictions on Cliffs' right to resolve disputes arising under the 2006 Escrow Agreement and/or EGI/Cliffs Settlement Agreement in a court of competent jurisdiction.

49.     Furthermore, Section 3 of the 2006 Escrow Agreement, as amended and superseded by Exhibit A to the EGI/Cliffs Settlement Agreement, provides that any arbitration commenced by EGI pursuant thereto is necessarily limited to a determination of "whether the expenditure in question is consistent with the provisions of (a) or (b) [in Section 3]."

50.     Finally, the EGI/Cliffs Settlement Agreement also addressed what would happen to any funds, if any, remaining in the Escrow Account upon termination.  Pursuant to Section

13

3.3.3 of the agreement, "upon the termination of the Escrow Agreement, Cliffs shall direct all remaining Policy proceeds, and shall also direct all amounts remaining in the Escrow Account, to be disbursed to EGI, which shall in turn disburse such funds to Larry Fromelius and/or the Barry Trust for application as provided" in separate agreements as between them (the "**Fromelius Remainder Rights**"). *See* EGI/Cliffs Settlement Agreement at Section 3.3.3.

51.     The EGI/Cliffs Settlement Agreement is governed by Wisconsin law. *See* EGI/Cliffs Settlement Agreement at Section 11.

**E.   Cliffs Provides EGI a Notice of Expenditure in Furtherance of the WE Energies Settlement and EGI Issues a Notice of Objection.**

52.     In furtherance of its obligations under the WE Energies Settlement, consistent with the express letter and intent of Section 3 of the 2006 Escrow Agreement (as amended and superseded by Exhibit A to the EGI/Cliffs Settlement Agreement) and further consistent with the notice requirements of Section 9 of the 2006 Escrow Agreement and Section 7 of the EGI/Cliffs Settlement Agreement, by notice dated May 10, 2021, Cliffs provided EGI with a "Notice of Expenditure From Escrow Account #1154688" ("**Notice of Expenditure**") along with a copy of the "Request for Expenditure" issued to CTIC that same date pursuant to the 2006 Escrow Agreement (as amended and superseded by Exhibit A to the EGI/Cliffs Settlement Agreement). A copy of the Notice of Expenditure is attached hereto as **Exhibit C**.

53.     Section 9 of the 2006 Escrow Agreement states that "[a]ny notice… shall become effective … (c) four business days after being deposited in the mails; with proper postage for first-class registered or certified mail prepaid." *See* 2006 Escrow Agreement at Section 9. On May 10, 2021, Cliffs sent the Notice of Expenditure by certified mail, prepaid. Thus, the Notice of Expenditure was effective as of May 14, 2021. *Id.*

14

54.     The Request for Expenditure directed CTIC to disburse "all remaining funds" from the Escrow Account, which transfer was effected that same day by CTIC in the total amount of $2,374,020.93.

55.     With respect to the requirement of a provision of a notice of expenditure, Section 3 of the 2006 Escrow Agreement (as amended and superseded by Exhibit A to the EGI/Cliffs Settlement Agreement) provides only that "Cliffs shall also give EGI prompt notice of any such request."  No additional requirements are imposed on Cliffs.

56.     Pursuant to the requirements of Section 3 of the 2006 Escrow Agreement (as amended and superseded by Exhibit A to the EGI/Cliffs Settlement Agreement), EGI accordingly had through and including June 13, 2021 within which time to "initiate an objection to the expenditure" by "giving written notice to Cliffs."

57.     By email dated May 13, 2021, EGI and Fromelius' counsel requested that Cliffs' counsel provide her with a copy of the WE Energies Settlement Agreement "so that we may properly evaluate the withdrawal of funds."   A copy of the referenced May 13, 2021 email is attached as **Exhibit D**.  Pursuant to EGI and Fromelius' counsel's request, the WE Energies Settlement Agreement was subsequently provided to her via email on May 19, 2021 after Cliffs secured WE Energies' permission to provide EGI and Fromelius' counsel with a copy of the agreement, notwithstanding the confidentiality restrictions imposed thereunder.  *See* WE Energies Settlement Agreement at Section 9.

58.     The May 13, 2021 email from EGI and Fromelius' counsel was not identified as nor was it an "objection" to the Notice of Expenditure consistent with the requirements of Section 3 of the 2006 Escrow Agreement (as amended and superseded by Exhibit A to the

12911346.1

EGI/Cliffs Settlement Agreement), nor did the May 13 email request an extension of the thirty (30) day objection deadline imposed by Section 3.

59.     Subsequently, by letter dated June 10, 2021, EGI and Fromelius purported to provide a "Notice of Objection to Expenditure from Escrow Account #1154688" ("**Notice of Objection**").  A copy of the Notice of Objection is attached hereto as **Exhibit E**.  The Notice of Objection was sent to Cliffs via email and Certified Mail.

60.     The Notice of Objection is subject to the same notice requirements contained in Section 9 of the 2006 Escrow Agreement.  Namely, EGI's Notice of Objection shall not become effective until "four business days after being deposited in the mails; with proper postage for first-class registered or certified mail, prepaid."  *See* 2006 Escrow Agreement at Section 9.

61.     June 10, 2021 was a Thursday.  Four business days after June 10, 2021 was Wednesday, June 16, 2021.  June 16, 2021 is more than thirty (30) days after May 14, 2021.

62.     The Notice of Objection was not timely issued and received consistent with the thirty (30) day objection period specified in Section 3 of the 2006 Escrow Agreement (as amended and superseded by Exhibit A to the EGI/Cliffs Settlement Agreement) which expired on June 13, 2021.

63.     Notably, in a thinly-veiled effort to disguise the untimely Notice of Objection, it baselessly references its alleged "prompt" nature and suggests that Cliffs' Notice of Objection "received by EGI on May 14" was only a "partial notice" and that "full notice" was not received until May 19 when Cliffs provided EGI and Fromelius' counsel with the WE Energies Settlement Agreement.

64.     Furthermore, the Notice of Objection was not timely issued and received consistent with the requirements of Section 9 of the 2006 Escrow Agreement.  To the extent that

12911346.1

the Notice of Objection was sent to the 2006 Escrow Agreement notice recipients via certified mail (as email delivery was not an option thereunder), it was not effective until "four business days after being deposited in the mails[,]" meaning the Notice of Objection was not received by Cliffs pursuant to the requirements of the 2006 Escrow Agreement until June 16, 2021 (four business days after June 10).

65.     In the Notice of Objection, EGI purported to object to the Notice of Expenditure on the grounds that (i) "[u]pon information and belief, [WE Energies] is not 'a provider of services performing remedial activities required or otherwise approved or authorized by EPA in payment for the performance such services'" as provided in Section 3(a)(iii) of the 2006 Escrow Agreement (as amended and superseded by Exhibit A to the EGI/Cliffs Settlement Agreement); and (ii) the WE Energies Settlement Agreement "and other supporting documentation provided to EGI specifically indicate that the withdrawal is both speculative and provided for potential future costs incurred."  The Notice of Objection does not identify the alleged "other supporting documentation" referenced therein.

66.     Subsequently, by letter dated July 7, 2021, EGI and Fromelius purported to provide a "Notice of Demand for Return of Funds Escrow Account #1154688" ("**Notice of Demand**").  A copy of the Notice of Demand is attached hereto as **Exhibit F**.

67.     In the Notice of Demand, EGI and Fromelius reiterated the same – and no additional – grounds for their Notice of Objection as originally specified therein (*see* Paragraph 65, *supra*).

68.     Furthermore, in the Notice of Demand, EGI and Fromelius threatened that "[i]f Cliffs fails to provide for immediate return of the funds at issue and [provide] a proper

12911346.1

accounting, EGI will be filing for arbitration as set forth in the August 31, 2006 Escrow Agreement within 30 days." *See* Exhibit F.

69.     EGI and/or Fromelius' threat to commence an arbitration pursuant to the 2006 Escrow Agreement was made notwithstanding the facts that (i) EGI was previously administratively dissolved by the Illinois Secretary of State prior to the threat being made, and therefore EGI would lack standing and/or the legal capacity to commence such an arbitration; and (ii) Fromelius, individually, is not a party to either the 2006 Escrow Agreement or EGI/Cliffs Settlement Agreement and therefore, likewise, lacks standing and/or the legal capacity to commence such an arbitration against Cliffs.

70.     To date, EGI and Fromelius continue to demand, without justification or legal basis, that Cliffs return the escrowed funds (totaling $2,374,020.93) to the Escrow Account.

71.     Cliffs disputes and denies that it has any obligation under the 2006 Escrow Agreement, EGI/Cliffs Settlement Agreement or otherwise to direct the return of the escrowed funds to the Escrow Account.

72.     Upon information and belief, EGI and Fromelius' Notice of Objection and attempt to frustrate Cliffs' efforts to satisfy its environmental remediation obligations is an inequitable, bad faith effort, contrary to public policy, designed to leverage and hopefully increase the amounts distributable under the Fromelius Remainder Rights to the detriment of Cliffs and the general public, and notwithstanding the letter, spirit and intent of the agreements reached between EGI and Cliffs as reflected in the 2006 Escrow Agreement and EGI/Cliffs Settlement Agreement.

73.     As alleged in Paragraph 49, under the 2006 Escrow Agreement, as amended, the parties contractually agreed to restrict arbitration to the narrow issue of "whether the [escrow]

expenditure in question is consistent with the provisions of (a) or (b) [in Section 3]."  Given this express limitation on the scope of the arbitration, neither the 2006 Escrow Agreement nor the EGI/Cliffs Settlement Agreement purport to limit or restrain Cliffs' ability to commence this action.  Declaratory relief is appropriate, and needed, to address several disputes set forth in the Complaint, including without limitation, (i) whether EGI as an entity that no longer exists and is dissolved has legal capacity and standing to initiate arbitration; (ii) whether EGI is in breach of the 2006 Escrow Agreement, as amended, and thereby barred from pursuing arbitration, because its objection was untimely; and (iii) whether EGI is in breach of the 2006 Escrow Agreement, as amended, and thereby barred from pursuing arbitration because as a dissolved entity it has no assets to pay the fees of the arbitrator and Cliffs' reasonable attorneys' fees.  The declaratory relief sought herein exceeds the permissible scope of the arbitration commenced by EGI.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment– 28 U.S.C. § 2201)

74.     Cliffs hereby incorporates by reference all of the allegations contained in Paragraphs 1 through 73 of its Complaint as if fully rewritten herein.

75.     As evidenced by the Notice of Expenditure, the Notice of Objection, the Notice of Demand and the parties' correspondence related thereto, and as further set forth in the remaining allegations herein, there exists an actual, significant and justiciable controversy between the parties concerning the performance and enforcement of the 2006 Settlement Agreement, EGI/Cliffs Settlement Agreement, and the parties' respective rights and obligations relative to the $2,374,020.93 in escrowed funds disbursed from the Escrow Account.

76.     An actual, substantial and justiciable controversy and dispute exists between and among Cliffs, EGI and Fromelius regarding (i) EGI and Fromelius' standing, capacity and/or right to commence and pursue an arbitration against Cliffs pursuant to Section 3 of the 2006

19

Escrow Agreement (as amended and superseded by Exhibit A to the EGI/Cliffs Settlement Agreement); (ii) whether WE Energies is a "provider of services" "performing remedial activities required or otherwise approved or authorized by EPA in payment for the performance of such services"; (iii) whether the $2,374,020.93 in escrowed funds was properly disbursed from the Escrow Account; and (iv) whether Cliffs is obligated to direct the return and/or return the $2,374,020.93 in escrowed funds to the Escrow Account.

77. The Court should order and declare that (i) EGI and Fromelius each lack standing, capacity and the right to commence and pursue an arbitration against Cliffs pursuant to Section 3 of the 2006 Escrow Agreement (as amended and superseded by Exhibit A to the EGI/Cliffs Settlement Agreement) first because EGI failed to timely object, second because EGI is a dissolved corporation and third because EGI has no assets to satisfy its contractual obligation to pay the fees of the arbitrator and Cliff's reasonable attorneys' fees as required by the 2006 Escrow Agreement, as amended; (ii) to the extent that EGI and/or Fromelius have standing, capacity and or the right to commence any such arbitration, that they be required to demonstrate financial capability and post a bond in advance of any such arbitration to adequately protect Cliffs' interests in light of EGI's dissolved status; (iii) that WE Energies, having itself performed remediation as required of it pursuant to the EE/CA ASAOC is thereby a "provider of services" "performing remedial activities required or otherwise approved or authorized by EPA in payment for the performance of such services" pursuant to Section 3(a) of the 2006 Escrow Agreement (as amended and superseded by Exhibit A to the EGI/Cliffs Settlement Agreement); (iv) that the $2,374,020.93 in escrowed funds was properly disbursed from the Escrow Account; and (v) that Cliffs is not obligated to direct the return and/or return the $2,374,020.93 in escrowed funds to

12911346.1

the Escrow Account and may properly utilize such funds in connection with satisfying its payment obligation under the WE Energies Settlement Agreement.

78.     Cliffs cannot obtain the declaratory relief sought herein in the context of any arbitration commenced by EGI as it would exceed the permissible scope of any such arbitration under Section 3 of the 2006 Escrow Agreement (as amended and superseded by Exhibit A to the EGI/Cliffs Settlement Agreement.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Cliffs Mining Company respectfully requests that the Court enter judgment in its favor and against Defendants East Greenfield Investors, LLC and Lawrence Fromelius, as follows:

1.     On Cliffs' First Claim for Relief, that the Court declare (i) EGI and Fromelius each lack standing, capacity and the right to commence and pursue an arbitration against Cliffs pursuant to Section 3 of the 2006 Escrow Agreement (as amended and superseded by Exhibit A to the EGI/Cliffs Settlement Agreement) first because EGI failed to timely object, second because EGI is a dissolved corporation and third because EGI has no assets to satisfy its contractual obligation to pay the fees of the arbitrator and Cliff's reasonable attorneys' fees as required by the 2006 Escrow Agreement, as amended; (ii) to the extent that EGI and/or Fromelius have standing, capacity and or the right to commence any such arbitration, that they be required to demonstrate financial capability and post a bond in advance of any such arbitration to adequately protect Cliffs' interests in light of EGI's dissolved status; (iii) that WE Energies, having itself performed remediation as required of it pursuant to the EE/CA ASAOC is thereby a "provider of services" "performing remedial activities required or otherwise approved or authorized by EPA in payment for the performance of such services" pursuant to Section 3(a) of the 2006 Escrow Agreement (as amended and superseded by Exhibit A to the EGI/Cliffs

12911346.1

Settlement Agreement); (iv) that the $2,374,020.93 in escrowed funds was properly disbursed from the Escrow Account; and (v) that Cliffs is not obligated to direct the return and/or return the $2,374,020.93 in escrowed funds to the Escrow Account and may properly utilize such funds in connection with satisfying its payment obligation under the We Energies Settlement Agreement;

2.      Award Cliffs its costs incurred in connection with this action; and

3.      Award Cliffs such other and further legal and/or equitable relief as the Court deems just and proper.

Respectfully submitted,

 s/ *Andrew H. Perellis*

OF COUNSEL:

Andrew H. Perellis (IL Bar 6181778)
aperellis@perellislaw.com
PERELLIS & ASSOCIATES, LLC
2549 Waukegan Road, Suite 10034
Bannockburn, Illinois 60015
Phone: (312) 554-5715

Eric B. Levasseur (OH Bar 0075353)
eblevasseur@hahnlaw.com
Chrstopher B. Wick (OH Bar 0073126)
cwick@hahnlaw.com
(Admission Applications to be submitted)
HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114-2301
Phone:  (216) 621-0150
Fax:  (216) 241-2824

*Attorneys for Plaintiff*
*Cliffs Mining Company*