# EXHIBIT A

## Escrow Agreement

This Escrow Agreement is dated as of August 31, 2006 (the "Agreement) and is among East Greenfield LLC, a Illinois limited liability company, licensed to do business in Wisconsin ("East Greenfield"), as assignee and successor to Kinnickinninc Development Group LLC, a Wisconsin limited liability company ("KK Group"), Cliffs Mining Company, a Delaware corporation ("Cliffs") and Chicago Title Insurance Company, a Missouri corporation, as escrow agent (the "Escrow Agent").

### Recitals

On February 22, 2006, Cliffs and KK Group entered into an agreement entitled "Liability Transfer and Indemnity Agreement." The parties amended this agreement on May 23, 2006 to extend the Closing Date to June 1, 2006. Under this agreement as amended (hereafter the "Transfer Agreement"), Cliffs was to transfer its interest in a certain note and the mortgage on two real estate parcels respectively located at 302 and 311 East Greenfield Avenue in the City of Milwaukee, Wisconsin which combined parcels consist of approximately 47 acres (the "Property") in exchange for the payment of $2,250,000, KK Group's assumption of certain liabilities of Cliffs relating to environmental conditions on the Property and related indemnification, and the deposit in escrow of $4,000,000 and the acquisition of a policy of insurance covering the costs of investigation and remediation relating to the Property. Not all of the requirements for closing the transaction contemplated by the Transfer Agreement were met at the time of provided for Closing.

Pursuant to paragraph 6 of the Transfer Agreement KK Group covenanted to deposit in escrow with a qualified financial institution, pursuant to an escrow agreement in form and substance reasonably satisfactory to Cliffs the sum of $4,000,000, such escrowed funds to be unconditionally committed for payment of all liabilities and expenses of Cliffs assumed by KK Group under Paragraph 4 of the Transfer Agreement and performance of KK Group's indemnity obligations to Cliffs as set forth in Paragraph 5 of the Transfer Agreement. In paragraph 6 of the Transfer Agreement, KK Group also covenanted to obtain and maintain an insurance policy in form reasonably satisfactory to Cliffs issued by a licensed insurance carrier reasonably satisfactory to Cliffs providing not less than five million ($5,000,000) dollars of coverage for environmental investigation and cleanup costs related to the Property and the associated groundwater and river sediments, to the extent such costs exceed $4,000,000, such policy to

1

name KK Group, Cliffs and Golden Marina Causeway, LLC, and their respective officers, directors, members, shareholders, parent companies and other affiliates, as insureds ("the insurance policy").

KK Group has been unable to arrange for the provision of the insurance policy. Further, the parties understand that an administrative order and/or settlement agreement requiring performance of a Remedial Investigation/ Feasibility Study ("RI/FS") is forthcoming from the United Sates Environmental Protection Agency ("EPA") that will require specific activities designed to determine the nature and extent of contamination, to identify and evaluate remedial alternatives and to recover certain response and oversight costs incurred by EPA.

On June 2, 2006, Cliffs and KK Group executed certain closing documents and KK Group deposited funds in the Meissner Tierney Fisher & Nichols Trust Account. The closing documents include (i) the Assignment of Mortgage – by Lender, (ii) the Assignment, Assumption and Indemnification Agreement, (iii) the Assignment of Contribution Rights, (iv) the Assignment of Claims and Insurance Policies, and (v) the Closing certificates of Cliffs and KK Group (together, the "Closing Documents").

On August 17, 2006, KK Group assigned all of its right, title and interest in and to the Transfer Agreement (including the trust account deposits), the Closing Documents and the rights it has acquired pursuant thereto in anticipation of Closing to East Greenfield, and East Greenfield has assumed all of KK Group's obligations pursuant thereto. Cliffs consented to that assignment and assumption in the Closing Extension Agreement (the "Closing Extension Agreement") executed on the date hereof. Cliffs and East Greenfield contemplate that the Closing Documents will be re-executed by East Greenfield and Cliffs as modified to reflect the circumstances of the transactions contemplated therein; the term "Closing Documents" herein shall extend to and include such re-executed documents.

In order to resolve the resulting issues, East Greenfield and Cliffs have agreed to the changes in the provisions of paragraph 6 of the Transfer Agreement to be reflected in this Agreement. The fundamental change in the arrangements reflected in paragraph 6 of the Transfer Agreement is that the escrowed amount will be increased to $4,500,000 and that the purchase of the insurance policy will be delayed until after the completion of the RI/FS. The parties contemplate that (i) the escrowed amount will be available to enable East Greenfield to fund the activities required to perform the RI/FS work and costs under any settlement agreement with or order issued by the U.S. EPA and/or under the terms of any agreement entered into by East Greenfield with other parties to perform the RI/FS work, (ii) up to $500,000 of the escrowed

2

amount may be used to fund the premium for the insurance policy, and (iii) all other expenditures made from the escrowed amount will be made only in accordance with the provisions of the Escrow Agreement or otherwise agreed upon by East Greenfield Investors and Cliffs.

Finally, KK Group has made only $3,000,000 of the required $4,500,000 available for deposit in escrow. The sum made available for deposit in escrow is the subject to this Agreement. In the Closing Extension Agreement, the parties have agreed to an additional time frame for the deposit of the $1,500,000 balance and the consequences of failure to meet that time frame all as provided below.

## Agreement

NOW, THEREFORE, in consideration of the above recitals, the covenants and agreements herein contained, and for other good, fair and valuable considerations and reasonably equivalent value, the receipt and sufficiency of which are hereby acknowledged by the parties hereto, the Escrow Agent, East Greenfield and Cliffs agree as follows, intending to be legally bound:

## Section 1.
## Establishment of Escrow Account

(a) East Greenfield hereby deposits with the Escrow Agent the sum of $3,000,000 to be held in escrow by the Escrow Agent, and hereby agrees to deposit an additional $1,500,000 (the "additional funds") into the Escrow Account on or before the August 31, 2006. The Escrow Agent accepts said sum and agrees to establish and maintain a separate interest bearing or other investment account(s) (the Escrow Account) therefore in its capacity as Escrow Agent pursuant to the terms of this Agreement.

(b) Further, East Greenfield has agreed to pay directly from its own funds the costs of the RI/FS settlement negotiations with the U.S.EPA attributable to Cliffs under the terms of a verbal agreement entered into with the other potentially responsible parties participating in said negotiations that are incurred prior to the execution of this agreement and the funding of the Escrow Account (including a deposit into the Quarles & Brady Trust Account in the amount of $12,500 but excluding those past response costs that were not to be assumed under the Transfer Agreement); to the extent it makes the said deposit and makes other such payments with the prior written consent of Cliffs, it may credit the said deposit and such other payments against its

3

obligation to contribute the additional funds. East Greenfield shall not be entitled to any other form of recovery of such costs from Cliffs.

(c) East Greenfield and Cliffs agree that if the additional funds are not deposited into the Escrow Account on or before August 31, 2006, Cliffs may at any time thereafter give notice to East Greenfield and the Escrow Agent rescinding the transactions between East Greenfield and Cliffs contemplated in the Transfer Agreement as provided by the agreement executed by East Greenfield and Cliffs on the date hereof entitled the "Closing Extension Agreement", and, thereupon, this Agreement shall be terminated and the remaining funds held in the Escrow shall be disposed of as provided in subsection (c) of Section 8, below.

(d) East Greenfield and Cliffs shall each execute and deliver to the Escrow Agent a certificate of incumbency substantially in the form of Exhibit A hereto for the purpose of establishing the identity of their respective representatives entitled to issue instructions or directions to the Escrow Agent on behalf of each such party. In the event of any change in the identity of such representatives, a new certificate of incumbency shall be executed and delivered to the Escrow Agent by the appropriate party. Until such time as the Escrow Agent shall receive a new incumbency certificate, the Escrow Agent shall be fully protected in relying without inquiry on any then current incumbency certificate on file with the Escrow Agent.

(e) East Greenfield and Cliffs shall each furnish the Escrow Agent with a completed Form W-8 or Form W-9, as applicable.

(f) (i) The purpose of this Escrow Agreement is to establish a fund beyond the dominion and control of East Greenfield which is comprised of cash and cash equivalent investments that, upon payment to the Escrow Agent, are no longer assets of East Greenfield. The funds so held by the Escrow Agent shall be used solely to pay of the liabilities and expenses of Cliffs assumed by East Greenfield under Paragraph 4 of the Transfer Agreement and the Closing Documents and performance of East Greenfield's indemnity obligations to Cliffs as set forth in Paragraph 5 of the Transfer Agreement and the Closing Documents on the terms and subject to the conditions provided in this Escrow Agreement. Accordingly, the only interest East Greenfield has with respect to the funds held under this Escrow Agreements is in (x) the remaining funds, if any, held by the Escrow Agent upon the receipt by Cliffs and East Greenfield of a Closure Letter and (y) any interest earned on the amounts held in escrow.

(ii) Notwithstanding the immediately preceding subsection 1(f)(i), should a court of competent jurisdiction or other finder of fact determine that East Greenfield has retained an

4

interest in the assets held by the Escrow Agent pursuant to this Agreement beyond that described in section 1(f)(i), this Escrow Agreement shall operate as a security agreement and lien pursuant to which East Greenfield hereby grants to Cliffs a first priority perfected security interest and lien in all of the assets held hereunder by the Escrow Agent regardless of their form, nature, or kind including, without limitation, contract rights, general intangibles, accounts, cash, investment property, instruments or other assets and all proceeds thereof. Further, in the event that it is determined that East Greenfield retains an interest in the assets in escrow beyond that described in subsection 1(f) (i) this Escrow Agreement shall constitute, when signed by the Escrow Agent, Cliffs, and East Greenfield, and authenticated record acknowledging that the Escrow Agent holds all assets in the Escrow Account as collateral for the benefit of Cliffs. East Greenfield hereby authorized Cliffs to file a financing statement in respect of such security interest.

## Section 2.
## Investments

(a)  The Escrow Agent agrees to invest and reinvest funds in the Escrow Account, but only upon written instructions signed by authorized agents of East Greenfield and Cliffs, which instructions shall not be unreasonably conditioned, withheld or delayed by East Greenfield or Cliffs, directing the amounts to be invested and the specific form of the investments. However, anything herein to the contrary notwithstanding, in no event shall the funds in the escrow account be invested in a demand, time, savings, passbook or similar account with a bank, savings bank, savings and loan associations, credit union, trust company or any other entity engaged in the business of banking,

(b)  The parties recognize and agree that the Escrow Agent will not provide supervision, recommendations or advice relating to either the investment of moneys held in the Escrow Account or the purchase, sale, retention or other disposition of any permitted investment. The Escrow Agent shall invest the funds in the Escrow Account in Dreyfus General Money Market Funds through Robert W. Baird & Co. The parties hereto agree that Escrow Agent shall not be held responsible for any loss of principal or interest, including defalcation by said broker or its employees, which may be incurred as a result of making the investments or redeeming said investments for the purposes of this agreement.

(c)  Interest and other earnings on permitted investments shall be added to the Escrow Account. However, at least as often as quarterly, such income (reduced by the fees and charges of paid to the Escrow Agent) shall be distributed to East Greenfield. Any loss or expense incurred

5

as a result of an investment will be borne by the Escrow Account. In the event that the Escrow Agent does not receive directions to invest funds held in the Escrow Account, the Escrow Agent shall invest such funds in money market funds initially designated by East Greenfield and Cliffs, or in successor funds if such initially designated funds are combined with one or more other funds.

(d)  The Escrow Agent is hereby authorized to execute purchases and sales of permitted investments through the facilities of its own trading or capital markets operations or those of any affiliated entity. The Escrow Agent shall send statements to each of the parties hereto on a monthly basis reflecting activity in the Escrow Account for the preceding month. Although the East Greenfield and Cliffs each recognizes that it may obtain a broker confirmation or written statement containing comparable information at no additional cost, East Greenfield and Cliffs hereby agree that confirmations of permitted investments are not required to be issued by the Escrow Agent for each month in which a monthly statement is rendered. No statement need be rendered for the Escrow Account if no activity occurred for such month.

(e)  East Greenfield and Cliffs acknowledge and agree that the delivery of the escrowed property is subject to the sale and final settlement of permitted investments. Proceeds of a sale of permitted investments will be delivered on the business day on which the appropriate instructions are delivered to the Escrow Agent if received prior to the deadline for same day sale of such permitted investments. If such instructions are received after the applicable deadline, proceeds will be delivered on the next succeeding business day.

## Section 3.
## Disbursement of Escrow Account

(a)  Prior to the time when the insurance policy is effective, or, if the insurance policy cannot be obtained or is determined by East Greenfield to be unavailable for the $500,000 premium allocated herein, prior to the completion of the requirements of the RI/FS settlement agreement, the only permissible disbursements shall be to (i) the Escrow Agent in payment of its fees and charges hereunder, (ii) providers of services performing the requirements of the RI/FS settlement agreement and/or order and the work plan approved by the EPA for the performance of the RI/FS (RI/FS Services") in payment for the performance of those services, (iii) providers of services performing remedial activities required or otherwise approved or authorized by EPA in payment for the performance of such services, (iv) payments to EPA of costs, including but not limited to any interest thereon, and monetary penalties, under the terms of any EPA or Wisconsin Department of Natural Resources settlement agreement or order; (v) payments to any trust or

6

escrow account established under and pursuant to the requirements of any group participation agreement entered into by East Greenfield with other potentially responsible parties relating to the RI/FS or to any remedial activities to be performed pursuant to any future settlement agreement with or order issued by the EPA relating to the remediation of the property, and (vi) to the Insurer or its agent in payment of the premium on the insurance policy. All such disbursements for RI/FS Services and remedial action services shall be in the amount of the percentage allocation attributable to Cliffs to the extent other potentially responsible parties have agreed with Cliffs and East Greenfield in writing upon a cost allocation, and, in the event no such allocation is agreed upon or one or more of the other potentially responsible parties fails or refuse for whatever reason to pay its agreed upon percentage allocation of the costs incurred for RI/FS Services or remedial action, in such amounts as are required to complete performance of the RI/FS and such remedial action or other activities as agreed to or ordered by EPA or the Wisconsin Department of Natural Resources. East Greenfield has undertaken to assume and indemnify Cliffs with respect to Cliffs obligations for such amounts and East Green field agrees that to the extent amounts are paid out of the Escrow Account that are in excess of Cliffs' allocable share of such costs and damages as finally determined, East Greenfield will take such action as may be necessary to recover the allocable shares of such excess from other potentially responsible parties as finally determined and restore the recovered amounts to the Escrow Account, or, if the Escrow has been terminated, apply them to the payment of Cliffs obligations with respect thereto and then to East Greenfield. Notwithstanding the foregoing, East Greenfield shall not be obligated to commence litigation, or any other form of civil, criminal or administrative action to recover any such allocable share from any other potentially responsible party; provided that, if Cliffs requests that East Greenfield commence litigation to recover such allocable share and the East Greenfield elects not to do so, East Greenfield shall assign to the extent assignable to Cliffs all of its rights from whatever source derived to recover any such allocable share within sixty (60) days after Cliffs request, and Cliffs may thereafter prosecute any and all such rights for its own account and East Greenfield shall co-operate fully with Cliffs in the prosecution of any such action by Cliffs.

    i.    The parties agree that the insurance policy shall provide commercially available coverages and shall otherwise (i) be reasonably satisfactory to Cliffs and East Greenfield in form and substance, and (ii) issued by a licensed insurance carrier reasonably satisfactory to Cliffs and East Greenfield providing not less than five million ($5,000,000) dollars of coverage for environmental investigation and cleanup costs related to the Property and the associated groundwater and river sediments (which costs shall include for purposes of this limitation the costs of the provision of the RI/FS Services to the extent properly paid from the escrowed



funds as provided in part iii of this subsection (a)), but only to the extent such costs that are incurred from and after the effective date of this agreement exceed $4,000,000, such policy to name East Greenfield, Cliffs and Golden Marina, and their respective officers, directors, members, shareholders, parent companies, as insureds. The parties agree to submit any dispute with respect to insurance coverages or the identity of the insurer to binding arbitration conducted in the same manner as set forth in subsection (d) of Section 3.

ii. Without prior approval of East Greenfield and Cliffs, not more than $500,000 of the escrowed funds may be paid as premiums on the coverage extended by the insurance policy. East Greenfield may elect to pay any additional premium necessary to acquire and maintain the insurance policy. East Greenfield or Cliffs may initiate any request for the payment of premiums for the insurance policy. No such premium payments from the escrowed funds shall be made without the endorsement of Cliffs and East Greenfield. Upon receipt of a request for payment of premiums properly endorsed by Cliffs and East Greenfield, the Escrow Agent shall promptly pay the requested premiums as set forth in the request.

iii. East Greenfield shall initiate the request for each expenditure meeting the requirements of this subsection (a). Any request for payment under this subsection (a) shall be made on a request form initially approved by East Greenfield, which may be subsequently changed upon mutual agreement of East Greenfield and Cliffs. However, no such payment shall be made without the written approval of Cliffs. Upon receipt of East Greenfield's request for payment properly endorsed by Cliffs, the Escrow Agent shall promptly pay the requested funds as set forth in the request.

iv. If, upon completion of the requirements of the RI/FS settlement agreement, no properly licensed insurer is willing to underwrite and issue the environmental insurance, meeting the requirements of this Agreement or if the premium or cost for the insurance exceeds $500,000, then the $500,000 in the escrow earmarked for payment of premiums for such insurance shall be retained in the escrow and utilized as provided in (b) below. If no properly licensed insurer has committed to issue the environmental insurance within three months after the completion of the requirements of the RI/FS settlement agreement, then either Cliffs or East Greenfield may by written notice to the other end the period in which this subsection (a) applies and thereby cause subsection (b) to apply.

8

(b)     After the effective date of the insurance policy, or, if the insurance policy cannot be obtained or is determined by East Greenfield to be unavailable for the $500,000 premium allocated herein, after the completion of the requirements of the RI/FS settlement agreement but prior to any termination under Section 8, additional amounts may be paid from the escrowed funds, but only for the payment of liabilities and expenses of Cliffs assumed by East Greenfield under Paragraph 4 of the Transfer Agreement and the Closing Documents and performance of East Greenfield's indemnity obligations to Cliffs as set forth in Paragraph 5 of the Transfer Agreement and the Closing Documents. East Greenfield shall initiate the request for each expenditure meeting the requirements of the preceding sentence. Any request for payment under this subsection (b) shall be made on a request form initially approved by East Greenfield, which may be subsequently changed upon mutual agreement of East Greenfield and Cliffs. However, no such payment shall be made without the written approval of Cliffs. Upon receipt of East Greenfield's request for payment properly endorsed by Cliffs, the Escrow Agent shall promptly pay the requested funds as set forth in the request. East Greenfield has undertaken to assume and indemnify Cliffs as set forth in Paragraphs 4 and 5 of the Transfer Agreement and agrees that to the extent amounts are paid out of the Escrow Account which are in excess of Cliffs allocable share of the assumed and indemnified obligations as finally determined, East Greenfield will pursue all reasonable efforts as may be necessary and legally justified under applicable environmental laws to recover the allocable shares of such excess from other known and financially solvent responsible parties as finally determined and restore the recovered amounts to the Escrow Account, or, if the Escrow has been terminated, apply them to the payment of such obligations with respect thereto. Notwithstanding the foregoing, East Greenfield shall not be obligated to commence litigation to recover any such allocable share from any other potentially responsible party; provided that, if Cliffs requests that East Greenfield commence litigation to recover such allocable share and the East Greenfield elects not to do so, it shall assign to Cliffs all of its rights from whatever source derived to recover any such allocable share within sixty (60) days after Cliffs request, and Cliffs may thereafter prosecute any and all such rights for its own account and East Greenfield shall co-operate fully with Cliffs in the prosecution of any such action by Cliffs.

(c)     In the event that East Greenfield fails, within 30 days after written notice by Cliffs to East Greenfield and the Escrow Agent, to cure any failure to satisfy the liabilities it has assumed under paragraph 4 of the Transfer Agreement and paragraph 1 of the Assignment, Assumption and Indemnity Agreement between Cliffs and East Greenfield effective June 2, 2006, (the "Assumption Agreement"), or to perform its obligations to indemnify Cliffs under paragraph 5 of the Transfer Agreement and paragraph 2 of the Assumption Agreement, or if East Greenfield

9

commits any other material breach of the Transfer Agreement or the Assumption Agreement, then Escrow Agent, upon written notice from Cliffs, shall act upon the written directions given under part i, below of Cliffs for disbursements in accordance with subsections (a) and (b) above.

    i.    Cliffs shall initiate the request for each expenditure meeting the requirements of this subsection (a) or (b). However, no such payment shall be made without the written approval of East Greenfield. Upon receipt of Cliffs' request for expenditure properly endorsed by East Greenfield, the Escrow Agent shall promptly pay the requested funds as set forth in the request.

(d)    In the event that either Cliffs or East Greenfield initiates a request for an expenditure under subsection (a) or (b), above, and the other does not endorse such expenditure request within thirty days thereafter, either of them may request that the issue of whether to make such expenditure shall be settled by binding arbitration conducted before three (3) arbitrators in the City of Milwaukee, Wisconsin. Unless otherwise agreed by Cliffs and East Greenfield, the arbitration shall be administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction. The arbitration award shall determine only whether to make the expenditure in question and, if made, the amount of the expenditure, provided that the arbitrator shall also, in the award, require that all of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party as part of the Award be paid by the non-prevailing party. Arbitration shall be requested by written notice given by the initiating party to the other and to the Escrow Agent. If the non-initiating party does not respond by written notice to the initiating party and the Escrow Agent consenting to the arbitration within fourteen (14) days after notice initiating the arbitration, then the requested expenditure shall be made by the Escrow Agent and the arbitration shall be cancelled. The award rendered by the arbitrator(s) shall be final and binding on all parties and may be entered and enforced by any court of competent jurisdiction. In the event that any party fails to proceed with arbitration proceedings instituted pursuant to this subsection (d), an aggrieved party shall be entitled to recover reasonable attorneys' fees and expenses in connection with enforcing its rights under this subsection (d), in addition to such other legal and/or equitable relief as may be appropriate. The Escrow Agent shall pay the requested expenditure only if and to the extent determined in the arbitrator(s) award.

### Section 4.
### Concerning the Escrow Agent

10

Case 2:21-cv-00968-LA   Filed 08/16/21   Page 11 of 20   Document 1-1

Notwithstanding any provision contained herein to the contrary, the Escrow Agent, including its officers, directors, employees and agents, shall:

(a) make no disbursements or other payments from the Escrow Account, other than interest payments to East Greenfield and fees and charges to Escrow Agent as permitted hereunder, without signed written direction from East Greenfield and Cliffs, final arbitration order pursuant to Section 3(d) or court order.

(b) not be liable for any action taken or omitted under this Agreement so long as it shall have acted in good faith and without negligence;

(c) have no responsibility to inquire into or determine the genuineness, authenticity, or sufficiency of any securities, checks, or other documents or instruments submitted to it in connection with its duties hereunder;

(d) be entitled to deem the signatories of any documents or instruments submitted to it hereunder as being those purported to be authorized to sign such documents or instruments on behalf of the parties hereto, and shall be entitled to rely upon the genuineness of the signatures of such signatories without inquiry and without requiring substantiating evidence of any kind;

(e) be entitled to refrain from taking any action contemplated by this Agreement in the event that it becomes aware of any disagreement between the parties hereto as to any facts or as to the happening of any contemplated event precedent to such action;

(f) have no responsibility or liability for any diminution in value of any assets held hereunder which may result from any investments or reinvestment made in accordance with any provision, which may be contained herein;

(g) be entitled to compensation for its services hereunder as per Exhibit B attached hereto, which is made a part hereof, and for reimbursement of its out-of-pocket expenses including, but not by way of limitation, the fees and costs of attorneys or agents which it may find necessary to engage in performance of its duties hereunder, all to be paid by East Greenfield and the Escrow Agent shall have, and is hereby granted, a prior lien upon any property, cash, or assets of the Escrow Account, with respect to its unpaid fees and nonreimbursed expenses, superior to the interests of any other persons or entities;

(h) be entitled and is hereby granted the right to set off and deduct any unpaid fees and/or

11

nonreimbursed expenses from amounts on deposit in the Escrow Account;

(i)     be under no obligation to invest the deposited funds or the income generated thereby until it has received a Form W-9 or W-8, as applicable, from East Greenfield and Cliffs, regardless of whether such party is exempt from reporting or withholding requirements under the Internal Revenue Code of 1986, as amended;

(j)     be, and hereby is, jointly and severally indemnified and saved harmless by East Greenfield and Cliffs from all losses, liabilities, costs and expenses, including attorney fees and expenses, which may be incurred by it as a result of its acceptance of the Escrow Account or arising from the performance of its duties hereunder, unless such losses, liabilities, costs and expenses shall have been finally adjudicated to have resulted from the bad faith or negligence of the Escrow Agent, and such indemnification shall survive its resignation or removal, or the termination of this Agreement;

(k)     in the event that (i) any dispute shall arise between the parties with respect to the disposition or disbursement of any of the assets held hereunder or (ii) the Escrow Agent shall be uncertain as to how to proceed in a situation not explicitly addressed by the terms of this Agreement whether because of conflicting demands by the other parties hereto or otherwise, be permitted to interplead all of the assets held hereunder into a court of competent jurisdiction, and thereafter be fully relieved from any and all liability or obligation with respect to such interpleaded assets. The parties hereto other than the Escrow Agent further agree to pursue any redress or recourse in connection with such a dispute, without making the Escrow Agent a party to same;

(l)     have only those duties as are specifically provided herein. The Escrow Agent shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument or document between the other parties hereto, in connection herewith. This Agreement sets forth all matters pertinent to the escrow contemplated hereunder, and no additional obligations of the Escrow Agent shall be inferred from the terms of this Agreement or any other Agreement. IN NO EVENT SHALL THE ESCROW AGENT BE LIABLE, DIRECTLY OR INDIRECTLY, FOR ANY (i) DAMAGES OR EXPENSES ARISING OUT OF THE SERVICES PROVIDED HEREUNDER, OTHER THAN DAMAGES WHICH RESULT FROM THE ESCROW AGENT'S FAILURE TO ACT IN ACCORDANCE WITH THE STANDARDS SET FORTH IN THIS AGREEMENT, OR (ii) SPECIAL OR CONSEQUENTIAL DAMAGES, EVEN IF THE ESCROW AGENT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES;

(m)     have the right, but not the obligation, to consult with counsel of choice and shall not be liable for action taken or omitted to be taken by Escrow Agent either in accordance with the advice of such counsel or in accordance with any opinion of counsel addressed and delivered to the Escrow Agent; and

(n)     have the right to perform any of its duties hereunder through agents, attorneys, custodians or nominees.

Any banking association or corporation into which the Escrow Agent may be merged, converted or with which the Escrow Agent may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Escrow Agent shall be a party, or any banking association or corporation to which all or substantially all of the corporate trust business of the Escrow Agent shall be transferred, shall succeed to all the Escrow Agent's rights, obligations and immunities hereunder without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding.

## Section 5.
## Attachment of Escrow Fund; Compliance with Legal Orders

In the event that any escrow property shall be attached, garnished or levied upon by any court order, or the delivery thereof shall be stayed or enjoined by an order of a court, or any order, judgment or decree shall be made or entered by any court order affecting the property deposited under this Agreement, the Escrow Agent is hereby expressly authorized, in its sole discretion, to obey and comply with all writs, orders or decrees so entered or issued, which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction, and in the event that the Escrow Agent obeys or complies with any such writ, order or decree it shall not be liable to any of the parties hereto or to any other person, firm or corporation, by reason of such compliance notwithstanding such writ, order or decree be subsequently reversed, modified, annulled, set aside or vacated.

## Section 6.
## Tax Matters

(a)     Reporting of Income. The Escrow Agent shall report to the Internal Revenue Service, as of each calendar year-end, and to East Greenfield all income earned from the investment of any sum held in the Escrow Account as and to the extent required under the provisions of the Internal

13

Revenue Code of 1986, as amended, and the regulations promulgated thereunder (the "Code").

(b)     Preparation and Filing of Tax Returns. East Greenfield shall prepare and file any and all income or other tax returns applicable to the Escrow Account with the Internal Revenue Service and all required state and local departments of revenue in all years income is earned in any particular tax year as and to the extent required under the provisions of the Code.

(c)     Payment of Taxes. Any taxes payable on income earned from the investment of any sums held in the Escrow Account shall be paid by East Greenfield, whether or not the income was distributed by the Escrow Agent during any particular year as and to the extent required under the provisions of the Code.

(d)     Unrelated Transactions. The Escrow Agent shall have no responsibility for the preparation and/or filing of any tax or information return with respect to any transaction, whether or not related to the Agreement or a related agreement that occurs outside the Escrow Account.

## Section 7.
## Resignation or Removal of Escrow Agent

(a)     The Escrow Agent may resign as such following the giving of thirty (30) days prior written notice to East Greenfield and Cliffs. Similarly, the Escrow Agent may be removed and replaced following thirty (30) days prior written notice to the Escrow Agent given jointly by East Greenfield and Cliffs. In either event, the duties of the Escrow Agent shall terminate (30) days after receipt of such notice (or as of such earlier date as may be mutually agreeable); and the Escrow Agent shall then deliver the balance of the moneys or assets then in its possession to a successor escrow agent as shall be appointed by the other parties hereto as evidenced by a written notice filed with the Escrow Agent.

(b)     If East Greenfield and Cliffs have failed to appoint a successor prior to the expiration of thirty (30) days following receipt of the notice of resignation or removal, the Escrow Agent may appoint a successor or petition any court of competent jurisdiction for the appointment of a successor escrow agent or for other appropriate relief, and any such resulting appointment shall be binding upon East Greenfield and Cliffs.

## Section 8.
## Termination

14

(a) This Agreement shall terminate upon the earlier of (i) the exhaustion of the funds held in escrow hereunder, and (ii) receipt by East Greenfield and Cliffs of a written notice of completion or closure from EPA, DNR or other lead environmental agency which provides East Greenfield, Cliffs and Golden Marina with approval of all work performed and a statement that no further environmental investigation or remediation is being required for the Property under any then existing agreement or order (a "Closure Letter"), Upon receipt of a Closure Letter and upon the payment in full of all costs of the completed environmental investigation and remediation and for natural resource damages required of Cliffs under any then existing agreement or order, if any, Cliffs will execute and deliver a letter instructing payment of such remaining amount to East Greenfield.

(b) Further, East Greenfield and Cliffs may agree to terminate this Agreement and the escrow hereunder, by execution and delivery to the Escrow Agent of a letter signed on behalf of East Greenfield and Cliffs by authorized representative thereof, the Escrow Agent agrees to sell the investments held in the Escrow Account and to pay the full balance and proceeds of the Escrow Account as the said letter shall instruct.

(c) Finally, Cliffs rescission notice under subsection (c) of Section 1, above may terminate this Agreement as provided therein. In that event, the Escrow Agent shall sell the investments held in the Escrow Account and upon payment in full of all costs incurred to the time of such termination, in connection with the environmental investigation and remediation of the Property, shall pay the full balance and proceeds of the Escrow Account to East Greenfield.

(d) Except in connection with a termination of this Agreement under subsection (c) of Section 1, above, the termination of this Agreement shall not affect the obligations of East Greenfield and Cliffs arising hereunder or under the Transfer Agreement and any instruments, undertakings or agreements executed pursuant thereto as they may have been executed, all of which shall continue in full force and effect.

### Section 9.
### Notices

Any notice, consent or request to be given in connection with any of the terms or provisions of this Agreement shall be in writing and be given in person, by facsimile transmission, courier delivery service or by mail, and shall become effective (a) on delivery if given in person, (b) on the date of delivery if sent by facsimile or by courier delivery service, or (c) four business days

15

after being deposited in the mails; with proper postage for first-class registered or certified mail, prepaid.

Notices shall be addressed as follows:

(i) If to East Greenfield:   c/o Lawrence Fromelius
                             12228 New Avenue, Building B
                             Lemont, IL  60439

    With a copy to:          Ronald J. Senechalle
                             Brent L. Amato
                             2300 Barrington Road, Suite 220
                             Hoffman Estates, IL  60195

(ii) If to Cliffs:           c/o George Hawk
                             1100 Superior Avenue
                             Cleveland, OH  44114-2589

    With a copy to:          Joseph E. Tierney III
                             Meissner Tierney Fisher & Nichols S.C.
                             111 East Kilbourn Avenue, 19th Floor
                             Milwaukee, WI  53202

(iii) If to the Escrow Agent: Chicago Title Insurance Company
                              20900 Swenson Drive, Suite 900
                              Waukesha, WI  53186

### Section 10.
### Governing Law, Counterparts

This Agreement shall be construed in accordance with the laws of the State of Wisconsin. It may be executed in several counterparts, each one of which shall constitute an original and all collectively shall constitute but one instrument.

## Section 11.
## Amendment, Modification or Waiver

This Agreement may be amended or modified and any term of this Agreement may be waived if such amendment, modification or waiver is in writing and signed by all parties to this Agreement.

## Section 12.
## Assignments of Interests

No assignment of the interest of any of the parties hereto shall be binding upon the Escrow Agent unless and until written evidence of such assignment in form satisfactory to the Escrow Agent shall be filed with and accepted by the Escrow Agent.

IN WITNESS WHEREOF, the parties have been duly executed this Escrow Agreement as of the date first above written.

East Greenfield Investors LLC

By: *[signature]* Lawrence Giandio
Its: *Manager*

Cliffs Mining Company

By: *[signature]*
Its: *attorney-in-fact*

Chicago Title Insurance Company, as Escrow Agent

By: *Lisa Peters*
Its: *Counsel*

17

## EXHIBIT A

## CERTIFICATE OF INCUMBENCY

The undersigned, _____, of _____, hereby certifies that the following named agents are duly appointed, qualified and acting in the capacity set forth opposite his/her name, and the following signature is the true and genuine signature of said agent.

Name    Title    Signature

_____    _____    _____

_____    _____    _____

Such agents are hereby authorized to furnish the Escrow Agent with directions relating to any matter concerning this Escrow Agreement and the funds and/or property held pursuant thereto.

IN WITNESS WHEREOF, _____ has caused this Certificate of Incumbency to be executed by its officer duly authorized this _____ day of _____, 2006.

[name of party]

By:_____
Name_____
Title_____

## EXHIBIT B

### SCHEDULE OF ESCROW AGENT FEES

Fee for initial setup: $500.00

Fee per draw: $75.00

JET7336.doc;1