# EXHIBIT
# B

## EGI/CLIFFS SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT (the "*Agreement*") is made and entered into as of this 31st day of August 2017, by and among East Greenfield Investors, LLC, an Illinois limited liability company ("*EGI*"); Cliffs Mining Company, a Delaware corporation ("*Cliffs*" and with EGI, the "*Parties*"), and only to the extent of the provisions of sections 6.1 and 6.2 below, Chicago Title Insurance Company, a Missouri corporation ("*Chicago Title*).

### RECITALS

WHEREAS, on June 29, 2015, Lawrence Fromelius (individually and as trustee of the Lawrence D. Fromelius Trust dated 12/22/1995, ") ("*Larry*") filed a petition for relief under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*" ) (Case Number 15-22373, pending in the United States Bankruptcy Court for the Northern District of Illinois (the "*Bankruptcy Court*") (the "*Larry Case*") and pursuant to sections 1107 and 1108 of the Bankruptcy Code, Larry remains in possession of his assets and is operating as a debtor in possession.

WHEREAS, on July 2, 2015, L. Fromelius Investment Properties, LLC, an Illinois limited liability company ("*Fromelius LLC*"), filed a petition for relief under Chapter 11 of the Bankruptcy Code (Case Number 15-22943 pending in the Bankruptcy Court, the "*Fromelius LLC Case*"), and pursuant to sections 1107 and 1108 of the Bankruptcy Code, Fromelius LLC remains in possession of its assets and is operating as a debtor in possession.

WHEREAS, on February 5, 2016, Golden Marina Causeway, LLC, a Wisconsin limited liability company ("*Golden Marina*" and, along with Larry and Fromelius LLC, the "*Debtors*"), filed a petition for relief under chapter 11 of the Bankruptcy Code (Case Number 16-03587 pending in the Bankruptcy Court, the "*Golden Marina Case*" and, along with the Larry Case and the Fromelius LLC Case, the "*Bankruptcy Cases*") and pursuant to sections 1107 and 1108 of the Bankruptcy Code, Golden Marina remains in possession of its assets and is operating as a debtor in possession.

WHEREAS, each of the Debtors have filed a revised plan dated February 7, 2017, as amended April 17, 2017 or May 12, 2017, as applicable (each a "*Revised Plan*," collectively, the "*Revised Plans*").

WHEREAS, the Debtors and EGI, on the one hand, and the Ann Marie Barry Trust dated March 24, 2003, by and through First Midwest Bank as Successor Trustee (the "*Barry Trust*"), on the other hand, entered into a settlement agreement to resolve the disputes among the Debtors, EGI, and the Barry Trust and on April 25, 2017, the Debtors filed motions under Rule 9019 for the entry of orders authorizing them to enter into the Settlement Agreement with the Barry Trust (the "*Barry Trust Settlements*").

{00097949 7}                                    1

WHEREAS, on May 26, 2017, Cliffs filed against EGI an involuntary petition for relief under chapter 7 of the Bankruptcy Code (Case No. 17-16364 pending in the Bankruptcy Court, the "*Involuntary Petition*"), and EGI then filed a motion to dismiss the Involuntary Petition, and the Barry Trust filed a motion to intervene, which motions are pending before the Bankruptcy Court, along with Cliffs' motion for the appointment of an interim trustee (the "*Pending EGI Motions*").

WHEREAS, Cliffs filed objections to the entry of orders confirming the Revised Plans and to the entry of orders approving the Barry Trust Settlements, alleging, among other things, that Cliffs holds the only claim against EGI and that EGI, not the Barry Trust, should receive the proceeds from Golden Marina's sale of the real estate located at 302 and 311 East Greenfield Avenue, Milwaukee, Wisconsin (the "*Golden Marina Property*") in partial satisfaction of the mortgage EGI has asserted on the Golden Marina Property, which was recorded prior to the mortgage held by the Barry Trust on the Golden Marina Property.

WHEREAS, in 2006, EGI and Cliffs entered into various agreements related to the Golden Marina Property, including, among other things, an (a) Assignment of Claims under Insurance Policies agreement dated August 31, 2006 (the "*Insurance Assignment*"), pursuant to which Cliffs assigned to EGI the rights under the insurance policies described therein, (b) Assignment of Contribution Rights Agreement dated August 31, 2006 (the "**Assignment of Contribution Rights**") pursuant to which Cliffs assigned to EGI certain cost recovery and contribution rights against other parties, and (c) the Assignment, Assumption and Indemnification Agreement dated August 31, 2006 (the "*Indemnity Agreement*"), pursuant to which EGI agreed to indemnify and hold harmless Cliffs for the matters set forth in paragraph 2 of the Indemnity Agreement (the "*Indemnified Claims*").

WHEREAS, to secure its assumption and indemnification obligations, EGI deposited $4,500,000 in escrow (the "*Escrow Account*") under an escrow agreement dated August 31, 2006 (the "*Escrow Agreement*" and, along with the Insurance Assignment and the Indemnity Agreement, as well as any other documents governing the relationship between EGI and Cliffs, dated as of August 31, 2006 (the "*2006 Agreements*)*.

WHEREAS, other than the 2006 Agreements, Cliffs is not aware of any other agreements between Cliffs and EGI that have any impact upon the matters set forth herein or that govern the relationship between Cliffs and EGI.

WHEREAS, EGI and Cliffs have engaged in extensive settlement discussions related to the disputes among them and based upon such discussions have come to an agreement, the terms of which are memorialized in this Agreement and in the related Settlement Agreement by and among the Barry Trust, the Debtors, EGI, and Cliffs entered into substantially contemporaneously herewith and appended hereto as Exhibit 1 (the "*Bankruptcy Settlement Agreement*").

## AGREEMENT

**NOW THEREFORE**, intending to be legally bound and in consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

1.    *Recitals*. The foregoing recitals and prefatory phrases and paragraphs are incorporated herein by reference and made part of this Agreement such that all of the above representations or undertakings are binding on all the Parties to this Agreement.

2.    *Releases.* EGI and Cliffs hereby agree that upon the Effective Date of this Agreement, which shall occur when this Agreement has been executed by Cliffs and EGI and the Bankruptcy Court has entered an Order approving the Bankruptcy Settlement Agreement, EGI and Cliffs shall be deemed to have each mutually released, and shall thereby release, the other, as well as each of their respective officers, employees, agents, directors, members, affiliates, successors, assigns, and heirs, without any further action required, from:

2.1.    Any and all claims, obligations, duties, demands, liabilities, rights, of any nature or kind whatsoever, whether matured or unmatured, known or unknown, fixed or unliquidated, currently existing or hereafter arising, including any under the 2006 Agreements, any Indemnified Claims and all obligations to each other arising under (i) paragraph 7 of the "*Closing Extension Agreement*" dated August 31, 2006, (ii) the "*Assumption of Obligations*" executed by EGI on August 31, 2006, and (iii) the "*Assignment, Assumption and Indemnification Agreement* dated August 31, 2006, including in particular those arising under paragraph 1 and 2 thereof; and all other obligations which have arisen or may arise with respect to the underlying transactions reflected in those agreements and the 2006 Agreements (the "*Released Claims*");

2.2.    Notwithstanding anything in this § 2 to the contrary, the obligations of EGI released herein shall survive and continue solely on a non-recourse basis, and only to the extent of any assets at any time held in the Escrow Account, which obligations shall continue to be secured by the Escrow Account, and Cliffs (a) shall have recourse with respect to such obligations only to the extent of assets at any time held in the Escrow Account as provided herein and in the Escrow Agreement and (b) covenants not to sue, and will not sue, EGI, Golden Marina or any of their respective affiliates, including Larry, on account of or in any way related to the Released Claims. Further, Cliffs shall retain the right to use, or draw upon the (a) funds contained in the Escrow Account and (b) any proceeds recovered under any

insurance policies (the "**_Policies_**") presently in existence covering EGI, Golden Marina, Cliffs or any of its affiliates that may relate to the Indemnified Claims, the Golden Marina Property or Cliffs or Golden Marina's status as a potentially responsible party ("**_PRP_**") relating to the Golden Marina Property (together, "**_Cliffs' Environmental Remediation Obligations_**").

2.3.    Notwithstanding anything in this § 2 to the contrary, the Parties are not released or discharged from any of the obligations specifically created by this Settlement Agreement and the Bankruptcy Settlement Agreement, it being the intent of this provision to eliminate any and all obligations between the Parties other than those arising under this Agreement and the Bankruptcy Settlement Agreement.

3.      _Insurance, Contribution Rights, and Use of Proceeds._

3.1.    EGI and Cliffs acknowledge and agree that (i) the Assignment of Contribution Rights and (ii) the Insurance Assignment are rescinded by mutual agreement, are void retroactive to the date of execution and none of the rights or obligations arising out of such agreements survive the execution of this Agreement, and thus all contribution rights and, subject to paragraphs 3.2 and 3.3, below, all rights with respect to insurance claims, belong solely to Cliffs.

3.2.    EGI and Cliffs agree that Cliffs will use commercially reasonable efforts to pursue diligently recovery on any Policies. EGI retains the right to request on a reasonable basis updates from Cliffs regarding the status of recovery on the Policies and Cliffs shall timely respond to such requests, as well as inform EGI of any material change in the status of its recovery efforts on the Policies.

3.3.    EGI and Cliffs agree that to the extent any of the proceeds of any of the Policies directly discharge any of the Indemnified Claims or Cliffs' Environmental Remediation Obligations or reimburse Cliffs for any payment or discharge of such liabilities, such proceeds shall belong to Cliffs. Cliffs shall apply the Policy proceeds it receives, or cause others under its direction to apply such proceeds, as follows:

3.3.1. First, to pay any legal fees and expenses of counsel retained to recover any proceeds under the Policies and/or to reimburse Cliffs for reasonable fees incurred in responding to requests for accounting pursuant to § 3.4 below;

3.3.2. Second, deposit into the Escrow Account to be disbursed as provided in the Escrow Agreement as amended below; and

3.3.3. Third and finally, upon the termination of the Escrow Agreement, Cliffs shall direct all remaining Policy proceeds, and shall also direct all amounts remaining in the Escrow Account, to be disbursed to EGI, which shall in turn disburse such funds to Larry Fromelius and/or the Barry Trust for application as provided in the Bankruptcy Settlement Agreement, the Barry Trust Settlements and the Revised Plans, as confirmed by the Confirmation Orders. Notwithstanding anything contained herein, in, and only in, the event that Cliffs obtains a total recovery of proceeds from the Policies in excess of Seven and a Half Million Dollars ($7,500,000.00), upon receipt of such proceeds in the Escrow Account, Cliffs shall direct the Escrow Agent to disburse a one-time payment (separate from any disbursement that may be payable upon termination of the Escrow Account) in the amount of Two Hundred Thousand Dollars ($200,000.00) from the Escrow Account to EGI, which shall in turn disburse such funds to Larry Fromelius and/or the Barry Trust for application as provided in the Bankruptcy Settlement Agreement, the Barry Trust Settlements and the Revised Plans, as confirmed by the Confirmation Orders.

3.4.   EGI has the right to an accounting of the use of any recovered proceeds of the Policies and Cliffs shall provide such an accounting not later than 30 days after receipt of such a request.

4.   *Joint Defense Agreement.*

EGI hereby assigns and transfers to Cliffs and Cliffs hereby assumes and accepts without recourse all rights, liabilities, obligations, title and interests EGI may have under (i) the Solvay Site RI/FS Trust Agreement u/a March 30, 2007 and (ii) the Former Milwaukee Solvay Coke & Gas Site Confidential Joint Participation and Defense Agreement – RI/FS dated November 2006 (the "*Joint Defense Agreement*"). In particular, EGI assigns all of its rights to vote as a member under the Joint Defense Agreement. Cliffs shall use all commercially reasonable efforts and take all reasonable actions to relieve EGI of any further obligations under the Joint Defense Agreement.

5.   *Financial Assurances Account Refund.*   If any funds or property transferred to the Financial Assurances Account by or for the benefit of EGI or Cliffs is refunded to Cliffs or EGI, such amounts shall be deposited into the Escrow Account and be subject to the Escrow Agreement, as amended by this Agreement. Cliffs shall notify EGI of any such refunds within 30 days after it first learns of the refund.

6.   *Escrow Agreement.*   EGI and Cliffs hereby agree that, upon the written consent of Chicago Title in its capacity as a party thereto, the Escrow

Agreement dated August 31, 2006 and entered into by EGI, Cliffs and Chicago Title is hereby amended as follows:

      6.1.    The purpose of the Escrow Agreement as expressed in paragraph (f)(i) of Section 1 of the Escrow Agreement shall continue and, subject to the amendments set forth below, payments shall be made from the funds held in escrow thereunder only as provided for therein.

      6.2.    The provisions of Section 3 of the Escrow Agreement are hereby revoked and deleted.   In lieu of those provisions there is hereby substituted a new Section 3 attached hereto as <u>Exhibit A</u>:

      6.3    Section 8(a) is hereby amended to remove the termination of the Escrow Agreement upon the exhaustion of the funds held in the Escrow Account to preserve the Escrow Account to receive proceeds recovered under the Policies.  The termination of the Escrow Agreement and the Escrow Account continues to be subject to the remaining provisions of Section 8 of the Escrow Agreement.

      6.4    The Parties agree that neither this Agreement nor the Escrow Agreement shall be amended or revised in the future in any way that affects the Barry Trust's rights, treatment, distributions or recovery under the Bankruptcy Settlement Agreement, the Barry Trust Settlements, or the Revised Plans as confirmed by the Confirmation Orders without the prior written consent of the Barry Trust, which shall not be unreasonably withheld.

      7.    **Notices**.  Any and all notices and other communications required or permitted hereunder shall be in writing and shall be delivered in person, sent by email to addresses provided below, sent via facsimile to the numbers shown below, or sent by registered or certified mail, return receipt requested and postage prepaid, to the addresses indicated below.

| EGI: | East Greenfield Investors, LLC |
|---|---|
| | 5611 Walnut Avenue |
| | Downers Grove, IL 60516 |
| | Email: l.fromelius.comcast.net and |
| | jenn.meier@comcast.net |
| Cliffs: | Cliffs Mining Company |
| | c/o Cleveland-Cliffs Inc. |
| | 200 Public Square, Suite 3300 |
| | Cleveland, OH 44114-2315 |
| | Facsimile:  (216) 694-5385 |
| | Email: Rob.Beranek@clevelandcliffs.com |

| [Chicago Title]: | Chicago Title Insurance Company |
| | 20900 Swenson Drive, Suite 900 |
| | Waukesha, WI 53186 |

Notices mailed as provided herein shall be deemed given on the date of their deposit in the United States mail. Notices sent via email or facsimile transmission as provided herein shall be deemed given upon their successful transmission. All other notices shall be deemed given when received. Any party may change the name, address and/or number to which notices thereto should be sent hereunder by giving notice of such change to the other parties hereto in accordance with the provisions of this paragraph. Notices to the Barry Trust hereunder shall be given as provided in the Bankruptcy Settlement Agreement.

8. **Further Assurance**. Each of the Parties hereto hereby agrees to execute and deliver such documents and to take such other actions at any time and from time to time hereunder as may be reasonably requested by any other party hereto carry out the provisions or purposes of this Agreement.

9. **Successors**. This Agreement shall be binding upon, and inure to the benefit of, the Parties hereto and their respective successors, heirs and assigns. No party may assign any of such party's rights or obligations under this Agreement without the prior written consent of the other Parties which consent shall not be unreasonably withheld. This Agreement shall not confer any rights or remedies upon any third-party beneficiary or other person other than the parties, except for the rights expressly set forth herein preserved for the Barry Trust with all attendant rights and remedies.

10. **Severability**. In the event that any provision of this Agreement is finally determined to be illegal, invalid or unenforceable, either in all jurisdictions and circumstances or in particular jurisdictions and circumstances, such provision shall be deemed severed herefrom in those jurisdictions and circumstances as to which it has been so determined to be illegal, invalid or unenforceable, and such severance shall not affect the legality, validity or enforceability of any other provisions hereof or of the severed provision in other jurisdictions and circumstances as to which it has not been so determined to be illegal, invalid or unenforceable.

11. **Governing Law**. This Agreement shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Wisconsin.

12.    **Interpretation**.  The headings in this Agreement are intended for convenience only, and shall not affect the meaning or interpretation hereof.  In interpreting this agreement, whenever the context so permits, (i) the singular shall include the plural and the plural shall include the singular, and (ii) any gender shall include all genders.  This Agreement shall be treated as having been drafted jointly by all of the parties, and no rule of construction or other presumption shall arise by reason of authorship of any of the provisions hereof.  In the event of any inconsistency between this Agreement and the provisions of the Bankruptcy Settlement Agreement, the provisions of the Bankruptcy Settlement Agreement shall control.

13.    **Counterparts**.  This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.  Executed counterparts may be evidenced by delivery of the signature page by fax or email.

14.    **Expenses**.  Each of the Parties shall bear all of its own costs and expenses (including attorneys' fees) in connection with this Agreement and the transactions contemplated herein.

15.    **Waiver**.  No failure or delay on the part of any Party in the exercise or enforcement of any of its rights under any provision hereof shall be deemed to be a waiver of such rights or of said provision in the absence of a written waiver signed by said party.

16.    **Amendment**.  This Agreement may be amended by, and only by, a written instrument signed by all of the Parties, and upon notice to, and if required by the other terms of this Agreement, the written agreement of the Barry Trust Trustee.

17.    **Integration**.  This Agreement contains the entire agreement of the Parties hereto with respect to the subject matter hereof, and supersedes any and all written or oral negotiations, warranties, representations, agreements or other understandings in regard thereto.

18.    **Section Titles**.  The section titles contained in this Agreement are and shall be without substantive meaning or content of any kind whatsoever and are not a part of the agreement between the Parties hereto.

In witness whereof, the undersigned have executed this agreement as of this 31st day of August 2017 intending to be legally bound.

Execution Version

East Greenfield Investors, LLC,                    Cliffs Mining Company

By:_____                         By: James D. Graham

    Lawrence D. Fromelius                       Its: EVP, Chief Legal Officer & Secretary
    Sole member and manager

Chicago Title Insurance Company

By:_____

    Its _____


Acknowledged:

Ann Marie Barry Trust dated March 24, 2003,
by and through First Midwest Bank as Successor Trustee

By:_____

## EXHIBIT A

### Section 3.

### Disbursement of Escrow Account

(a) Prior to the completion of the requirements of the RI/FS settlement agreement, the only permissible disbursements shall be to (i) the Escrow Agent in payment of its fees and charges hereunder, (ii) providers of services performing the requirements of the RI/FS settlement agreement and/or order and the work plan approved by the EPA for the performance of the RI/FS ("RI/FS Services") in payment for the performance of those services, (iii) providers of services performing remedial activities required or otherwise approved or authorized by EPA in payment for the performance of such services, (iv) payments to EPA of costs, including but not limited to any interest thereon, and monetary penalties, under the terms of any EPA or Wisconsin Department of Natural Resources settlement agreement or order; and (v) payments to any trust or escrow account established under and pursuant to the requirements of any group participation agreement entered into by East Greenfield with other potentially responsible parties relating to the RI/FS or to any remedial activities to be performed pursuant to any future settlement agreement with or order issued by the EPA relating to the remediation of the property. All such disbursements for RI/FS Services and remedial action services shall be in the amount of the percentage allocation attributable to Cliffs to the extent other potentially responsible parties have agreed with Cliffs in writing upon a cost allocation, and, in the event no such allocation is agreed upon or one or more of the other potentially responsible parties fails or refuse for whatever reason to pay its agreed upon percentage allocation of the costs incurred for RI/FS Services or remedial action, in such amounts as are required to complete performance of the RI/FS and such remedial action or other activities as agreed to or ordered by EPA or the Wisconsin Department of Natural Resources.

(b) After the completion of the requirements of the RI/FS settlement agreement, additional amounts may be paid from the escrowed funds, but only for the payment or reimbursement of liabilities and expenses of Cliffs that had been assumed by East Greenfield under Paragraph 4 of the Transfer Agreement and the Closing Documents or would constitute performance of the indemnity obligations that East Greenfield had undertaken as set forth in Paragraph 5 of the Transfer Agreement and the Closing Documents.

(c) Cliffs shall initiate the request for each expenditure meeting the requirements of subsection (a) or (b) by written notice to the Escrow Agent. Cliffs shall also give EGI prompt notice of any such request. Upon receipt of Cliffs' request for payment, the Escrow Agent shall promptly pay the requested funds as set forth in any request by Cliffs. EGI may initiate an objection to the expenditure, but only by giving written notice to Cliffs within thirty (30) days after notice from Cliffs of such request. However, no objection by EGI shall affect the obligation of the Escow Agent to make propmpt payment pursuant to Cliffs' request for payment,

Execution Version

nor shall EGI hinder or dely such payment. If Cliffs does not, within thirty (30) days of such objection restore the amount of such expenditure to the escrow, EGI may commence an arbitration within thirty (30) days after the expriration of the period in which Cliffs may restore the expenditure to the escrow fund. Any arbitration under this subparagraph (c) shall be administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures. Arbitration shall be the sole remedy of EGI hereunder; provided that this clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction. The arbitration award shall determine only whether the expenditure in question is consistent with the provisons of (a) or (b), above, provided that the arbitrator shall also, in the award, require that all of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party be paid by the non-prevailing party. If the arbitation determines that the expenditure in question is not consistent with the provisions of (a) or (b) above, Cliffs shall be obligated to promptly restore the amount of the expenditure in question to the escrow fund. The award rendered by the arbitrator(s) shall be final and binding on all parties and may be entered and enforced by any court of competent jurisdiction.