UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| CLIFFS MINING COMPANY, | ) | |
|---|---|---|
| | ) | Case No. 2:21-CV-968 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EAST GREENFIELD INVESTORS, LLC, and | ) | |
| LAWRENCE FROMELIUS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Defendants East Greenfield Investors, LLC, ("EGI") and Lawrence Fromelius ("Fromelius"[1]) (collectively "Defendants") submit this memorandum in support of its motion to dismiss the Complaint (the "Complaint") filed by Cliffs Mining Company ("Cliffs") or, alternatively, to compel arbitration.

**PRELIMINARY STATEMENT**

This dispute stems from a 2016 Settlement Agreement entered into in conjunction with a bankruptcy settlement, incorporating, with some modifications, the terms of a 2006 escrow agreement. Disputes concerning those agreements are explicitly subject to an arbitration clause. Cleveland Cliffs brought the present action allegedly seeking "declaratory relief" disguised as "provisional remedies in aid of arbitration" pursuant to those agreements. There is nothing provisional about the relief sought by Cliffs. What Cliffs actually seeks is a full judgment in its favor on the merits.

According to the plain terms set forth in its Complaint and its attachments, Cliffs has exhibited a complete disregard for its obligations under the Settlement Agreement. It initially

---

[1] Fromelius is named in the Complaint as the sole managing member of EGI.

1

provided notice to Cliffs pursuant to the agreement with critical information referenced within the notice as included intentionally withheld. Once received, that information demonstrated that Cliffs had withdrawn funds for improper purposes. In response, EGI objected and demanded accountings of the expenditures or in the absence of such accountings, a return of the funds. Cliffs ignored these objections, demands, and requests. EGI filed for arbitration.

Cliffs now seeks this Court's approval for its bad behavior knowing that if it loses, it still has a chance to prevail with the arbitrator. Cliffs asks this Court to do the following in furtherance of its scheme to ignore all of the terms to which it previously agreed:

1) Cliffs would like this Court to find that it may have two bites at the apple. If this Court rules against Cliffs, EGI is still bound by the arbitration clause.

2) Cliffs would like this Court to render a judgment on the merits despite the existence of an arbitration clause that allows only for provisional remedies in furtherance of arbitration.

3) Cliffs asks the Court to find that EGI is bound by the arbitration clause but Cliffs is not.

4) Cliffs asks the Court to find that it can withdraw from the escrow without regards to the terms for withdrawal set forth in the Agreement.

5) Cliffs asserts that the date that they provided a portion of their Notice of Withdrawal with referenced pages clearly missing constituted proper service.

6) Cliffs asks the Court to find that because EGI is bankrupt, it cannot enforce the arbitration clause because a bankrupt entity cannot pay arbitrator fees even though Cliffs filed suit against that same entity here.

This Court should deny Cliffs' requests in their entirety. Cliffs should be required to arbitrate its claims as set forth in the controlling agreements. In addition, the issue of arbitrability itself is best

left to the arbitrator. Alternatively, this Court should find that Cliffs has waived the arbitration clause and agree to issue a final and binding determination on the merits of EGI's claims originally presented to the arbitrator.

**STATEMENT OF FACTS**

A. History Behind the Escrow Agreement.

The area in and around 311 East Greenfield Avenue ("the Site") is the former home of a coke plant operated by a predecessor to Cliffs from 1903 to 1983. (Complaint ¶¶ 12-13). Cliffs continued to own the land where the plant previously existed until about 2003 when Golden Marina Causeway ("GMC"), formerly owned by EGI, purchased the property located at and around the Site. (*Id.*). It is not alleged that EGI, or any entity that it owned, ever owned or operated the coke plant that contributed to the contamination at the Site. Complaint ¶¶ 12-14).

As alleged in Cliffs' Complaint, on or about March 30, 2006, Cliffs, EGI, American Natural Resources, Maxus Energy Corporation, Wisconsin Electric Power Company and Wisconsin Gas LLC (d/b/a WE Energies ("WE")) received a Special Notice Letter (the "SNL") from the EPA informing them that they were all Potential Responsible Parties ("PRP"s) and that the EPA would conduct a Remedial Investigation/Feasibility Study ("RI/FS") for the Site under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq. ("CERCLA"). (Complaint ¶¶ 15-16).

On or about August 31, 2006, Cliffs and EGI's predecessor, Kinnickinnic Development Group, entered into an escrow agreement (the "Escrow Agreement"), the terms of which (as later partially modified) are the subject of this litigation. (Complaint ¶ 28). The funds placed in the escrow were intended to cover the costs of the RI/FS and subsequent remediation and could only be withdrawn for specific limited purposes. (Complaint ¶¶ 28-34, Ex. A).

3

The PRPs then agreed to work together in defense of any action by the EPA and in or about December 2006 and January 2007 entered into the "Former Milwaukee Solvay Coke & Gas Site Confidential Joint Participation and Defense Agreement – RI/FS" pursuant to which they agreed to cooperatively participate in, and jointly fund, the RI/FS. On or about January 26, 2007, the PRPs and the EPA entered into an Administrative Settlement Agreement and Order on Consent ("ASAOC") agreeing to the completion of the RI/FS for the Site to determine the nature and extent of contamination and propose remedial options for the site. (Complaint ¶ 18). Following completion of The RI/FS, the EPA will enter a Record on Decision selecting a remedy which the PRPs may enter into a further ASAOC to undertake or the PRPs may enter into a Consent Decree via court action. (*Id.*).

Before the RI/FS was completed, GMC, EGI, and other related entities filed a petition for relief pursuant to the United States Bankruptcy Code, 11 U.S.C §§ 101-1532. (Complaint ¶¶ 19-20; 37-40).[2] (collectively, the "Fromelius Bankruptcy Actions") As part of the bankruptcy proceedings, EGI and its related entities entered into a settlement with another creditor in 2017. (Complaint ¶¶ 37-40). When Cliffs learned of this other settlement, they objected and and commenced an involuntary Chapter 7 bankruptcy proceeding against EGI on May 26, 2017.[3] (Complaint ¶ 40). Cliffs and EGI subsequently entered into a Settlement Agreement (the "2017 Agreement") to resolve their disputes. (Complaint ¶ 41, Ex. B). That 2017 Agreement modified the terms of the 2006 Escrow Agreement, in part.

---

[2] These actions can be found at United States Bankruptcy Court for the Northern District of Illinois, Case Nos. 15-22373, 15-22943 and 16-03587.
[3] *In re: East Greenfield Investors, LLC*, United States Bankruptcy Court, Northern District of Illinois, Case No. 17-16364.

WE, a PRP as detailed above, purchased the Site out of that bankruptcy. (Complaint ¶¶ 19-20). WE and Cliffs subsequently engaged in litigation surrounding the remedial action at the Site. (Complaint ¶¶ 21-24). Cliffs ultimately agreed to settle that litigation by providing WE Energies, who is not a provider of remedial services pursuant the escrow agreement, with a sum of money that Cliffs alleges in its Complaint, without supporting documentation to demonstrate proportionality as requested by EGI, was more than the amount held in the escrow account at issue. (Complaint ¶¶ 25-27).[4]

B. The Relevant Escrow Provisions

Exhibit A to the 2017 Escrow Agreement[5] are the terms that control the present disputes. Cliffs reproduced this section in their Complaint with some portions noticeably omitted. The provisions are reformatted slightly for ease in reading and the portions omitted by Cliffs are included in bold below:

> (a) Prior to the completion of the requirements of the RI/FS settlement agreement, the only permissible disbursements shall be to
>
>> (i) the Escrow Agent in payment of its fees and charges hereunder;
>>
>> (ii) providers of services performing the requirements of the RI/FS settlement agreement and/or order and the work plan approved by the EPA for the performance of the RI/FS ("RI/FS Services") in payment for the performance of those services,
>>
>> (iii) providers of services performing remedial activities required or otherwise approved or authorized by EPA in payment for the performance of such services;
>>
>> (iv) payments to EPA of costs, including but not limited to any interest thereon, and monetary penalties, under the terms

---

[4] Cliffs did not notify EGI of any of this litigation and when EGI attempted to inquire into the status of any litigation that might impact the issue, they were denied any and all details.

[5] Exhibit A to the 2017 Agreement amends the relevant portions of the Escrow Agreement containing the arbitration clause.

of any EPA or Wisconsin Department of Natural Resources settlement agreement or order; and

(v) payments to any trust or escrow account established under and pursuant to the requirements of any group participation agreement entered into by East Greenfield with other potentially responsible parties relating to the RI/FS or to any remedial activities to be performed pursuant to any future settlement agreement with or order issued by the EPA relating to the remediation of the property.

**All such disbursements for RI/FS Services and remedial action services shall be in the amount of the percentage allocation attributable to Cliffs to the extent other potentially responsible par ties have agreed with Cliffs in writing upon a cost allocation, and, in the event no such allocation is agreed upon or one or more of the other potentially responsible parties fails or refuse for whatever reason to pay its agreed upon percentage allocation of the costs incurred for RI/FS Services or remedial action, in such amounts as are required to complete performance of the RI/FS and such remedial action or other activities as agreed to or ordered by EPA or the Wisconsin Department of Natural Resources.**

(b) After the completion of the requirements of the RI/FS settlement agreement, additional amounts may be paid from the escrowed funds, but only for the payment or reimbursement of liabilities and expenses of Cliffs that had been assumed by [EGI] under Paragraph 4 of the Transfer Agreement and the Closing Documents or would constitute performance of the indemnity obligations that [EGI] has undertaken as set forth in Paragraph 5 of the Transfer Agreement and the Closing Documents.

(c) Cliffs shall initiate any request for each expenditure meeting the requirements of subsection (a) or (b) by written notice to the Escrow Agent. Cliffs shall also give EGI prompt notice of any such request. Upon receipt of Cliffs' request for payment, the Escrow Agent shall promptly pay the requested funds as set forth in any request by Cliffs. EGI may initiate an objection to the expenditure, but only by giving written notice to Cliffs within thirty (30) days after notice from Cliffs of such request. However, no objection by EGI shall affect the obligation of the Escrow Agent to make prompt payment pursuant to Cliffs' request for payment, nor shall EGI hinder or delay such payment. If Cliffs does not, within thirty (30) days of such objection restore the amount of such expenditure to the escrow, EGI may commence an arbitration within thirty (30) days after the expiration of the period in which Cliffs may restore the expenditure of the escrowed funds . . . Arbitration shall be the sole remedy of EGI hereunder; provided that this clause shall not preclude parties

from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction. The arbitration award shall determine only whether the expenditure in question is consistent with the provisions of (a) or (b) above, provided that the arbitrator shall also, in the award, require that all of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party be paid by the non-prevailing party.

Exhibit A to Complaint Exhibit B (hereinafter "Section 3").

C. Incomplete Notice, Objections, and Arbitration

On May 14, 2021, EGI received a letter with an electronic return receipt from Cliffs subsequent to an email previously forwarded with a similar communication. (Complaint Ex. C). The letter and the email from Cliffs both referenced several pages of information that were not included either by inadvertent or intentional omission, provided no reason for the disbursement of funds, and did not explain to whom the funds were paid. (*Id.*) On May 19, 2021, after emails and phone calls were exchanged to determine why the crux of the Notice was missing, Cliffs finally supplied the missing attachment via email.[6] (Complaint ¶ 57, Ex. D). The missing attachment consisted of the Settlement Agreement executed between Cliffs and WE. The missing pages stated that payment was made not to any entity permitted pursuant to Section 3(a), but rather to WE Energies. (Complaint ¶ 65, Exhibit E).

On June 10, 2021, EGI sent Cliffs via email and first class mail their objections to Cliffs' withdrawal of funds from the escrow account but the money was already withdrawn in violation of the thirty day waiting period. (Section 3(c); Complaint Ex. E). On July 7, 2021, EGI sent a letter demanding return of the funds or, at a minimum, a more detailed accounting of all expenditures related to the withdrawal from the escrow account demonstrating that the withdrawal did not

---

[6] Cliffs failed to include this attachment with its complaint but offered to provide it via seal at a later date upon request.

violate any pre-existing agreements. (Complaint ¶ 68, Ex. F). Cliffs did not provide an accounting. Cliffs did not return the funds to the Escrow. EGI filed for arbitration.

**ARGUMENT**

Section 2 of the Federal Arbitration Act provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The central purpose of the FAA "is to ensure that private agreements to arbitrate are enforced according to their terms." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quotations omitted); *see also Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995). The FAA sets forth a "strong federal policy in favor of enforcing arbitration agreements." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217 (1985). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including when "constru[ing] . . . the contract language itself." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Cliffs purportedly seeks a Declaratory Judgment pursuant to 28 U.S.C. § 2201. Cliffs Complaint, however, argues issues that include the arbitrability of the issues themselves and ultimately the merits at the heart of the dispute. Cliffs asks this Court to dismiss EGI's claim for arbitration.

**I.      The Issue of Arbitrability is Best Decided by the Arbitrator.**

Cliffs asserts that while EGI's only remedy is arbitration, Cliff's is not subject to the arbitration clause and related matters such as standing should be decided by the Court. In doing so, Cliffs overlooks the full scope of the arbitration clause. The clause at issue provides only for provisional remedies to be decided by the courts. Any issues surrounding EGI's commencement of arbitration is governed by JAMS and its Rules.

"The FAA contains a general policy favoring arbitration and a liberal federal policy favoring arbitration agreements." Lewis v. Epic Sys. Corp., 823 F.3d 1147, 1159 (7th Cir. 2016). Most courts hold that an agreement to arbitrate in accordance with an arbitration tribunal's rules clearly indicates the parties' intention to let an arbitrator determine whether their dispute is arbitrable. *See, e.g., Cequent Performance Prods., Inc. v. Let's Go Aero, Inc.*, No. 14 C 8457, 2016 WL 4036754, at *6 (N.D. Ill. July 28, 2016) ("Given this AAA requirement that the arbitrator decide 'the arbitrability of any claim,' district courts in this circuit (and courts of appeals in other circuits, including the 1st, 2d, 5th, 8th, 9th, 11th, and Federal Circuits) have consistently held that a clause requiring arbitration according to AAA Rules requires the arbitrator to resolve arbitrability disputes.)

While in this case, the arbitration award will address only whether the award was proper, Cliffs seeks to skirt the arbitration entirely via declaratory judgment. Section 3 of the 2006 Agreement as Amended by the 2017 Agreement clearly states that, "***Any*** arbitration under this subparagraph (c) shall be administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures." (Ex. A to Ex. B). JAMS Streamlined Arbitration Rules and Procedures specifically provide:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

JAMS SARP 8(b).

By indicating that all arbitrations commenced to determine the scope of the arbitration award were subject to JAMS streamlined Rules, Cliffs explicitly consented to JAMS determining the

9

interpretation and scope of the arbitration clause. Cliffs should not be allowed to circumvent or negate this agreement.

.II.     **Even If Arbitrability Is Not Arbitrable, the Remainder of Cliffs' Claims Are.**

Cliffs has played fast and loose with its own agreements, repeatedly maintaining that it has no genuine or binding obligations under the 2006 or 2017 Agreement with regards to the escrow, suggesting a wholly nonsensical reading of the documents at issue. Cliffs took money from the escrow account and used it to satisfy its obligations to WE. Cliffs ignored the designated uses of the escrow set forth in Section 3(a). Cliffs then hid its actions by playing games with the notice requirements, providing EGI with a letter that did not make sense, referencing missing documents, attachments, and information. (Complaint ¶¶ 52-65).

Cliffs now asks this Court to decide this case on the merits. There is nothing in Cliffs' request for a Declaratory Judgment that can be construed as a "provisional remedy in aid of arbitration" as permitted by the Agreement. Cliffs ultimately seeks a final determination dismissing and directing the dismissal of all of EGI's claims. Even if this Court determines that the arbitrability of this dispute is not subject to arbitration, the Court should still determine that issues such as notice and standing are issues for the arbitrator as set forth in Section 3 and clarified by JAMS rules as set forth above.

"The FAA contains a general policy favoring arbitration and a liberal federal policy favoring arbitration agreements." *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1159 (7th Cir. 2016). Thus, in cases such as this, "[o]nce it is clear … that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). Cliffs can only be allowed to sidestep the arbitration process if

Cliffs can demonstrate "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 1032. Cliffs cannot and has not met this burden.

There is absolutely nothing in the Agreement that can be read as allowing Cliffs to obtain a dismissal of EGI's arbitration claims via this Court. On the contrary, Section 3 allows only for provisional remedies from the Courts and states any disputes brought pursuant to it shall be administered by JAMS.

## **CONCLUSION**

For the foregoing reasons, this Court should dismiss Cliffs' Complaint and compel arbitration. In the alternative, this Court should deem that Cliffs has waived the arbitration clause and agree to consider ALL claims pursuant to the escrow agreement on the merits.

Dated: October 4, 2021.

                                          Respectfully submitted,

                                        EAST GREENFIELD INVESTORS, LLC,
                                        And LAWRENCE FROMELIUS,

                                        By: /s/ George S. Bellas
                                              GEORGE S. BELLAS
                                              One of Defendants' Attorneys

George S. Bellas (*george@bellas-wachowski.com*)
Misty J. Cygan (*misty@bellas-wachowski.com*)
Jillian Tattersall (*jillian@bellas-wachowski.com*)
BELLAS & WACHOWSKI
Attorneys for Defendants
15 N. Northwest Highway
Park Ridge, Illinois 60068
(847) 823-9032