# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **CLIFFS MINING COMPANY,** | CASE NO. 2:21-CV-968 |
| **Plaintiff,** | |
| v. | |
| **EAST GREENFIELD INVESTORS, LLC, et al.,** | |
| **Defendants.** | |

## CLIFFS MINING COMPANY'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### I. INTRODUCTION

Cliffs Mining Company ("**Cliffs**") disbursed funds to partially satisfy an obligation to help remediate the Milwaukee Solvay site (the "**Site**"). Defendants' Motion to Dismiss (the "**Motion**") is another attempt by a bankrupt and now dissolved entity eschewing contractual requirements to line their own pockets and improperly claw back money that is supposed to be spent—and was spent—on remediating environmentally contaminated property. This lawsuit solely concerns whether Defendants failed to timely object to Cliffs' disbursement. The simple fact of the matter is that (1) the clear and unambiguous language in the Settlement Agreements (defined below) establishes a specific process for providing notice of and making objections to escrow expenditures; (2) Cliffs strictly abided by those contractual requirements; and (3) EGI failed to abide by those same contractual requirements. To allow Defendants to escape a judicial

determination regarding whether their objection was untimely and proceed to arbitration would unfairly prejudice Cliffs and the benefit of the bargain it negotiated for through the 2017 Settlement Agreement.

It is indeed ironic that EGI accuses Cliffs of seeking a second bite at the apple (*see* Motion, pg. 2) when, in reality, Defendants' Motion constitutes their fourth[1] bite at the apple. In essence, the Motion is improperly asking this Court to rewrite the Settlement Agreements to Defendants' benefit. As will be discussed in further detail below, Defendants simply cannot avoid the clear and unambiguous language of the Settlement Agreements or the consequences of their own failure to timely object. Defendants' improper and untimely objection to Cliffs' expenditure forced it to file this declaratory judgment action to avoid an improper arbitration. This Court should determine whether Defendants timely objected to Cliffs' disbursement before any decision regarding whether this matter should proceed to arbitration. Accordingly, Defendants' Motion must be denied.

## II. STATEMENT OF FACTS

While the overall matter relating to the EPA and Site remediation involves a long, sordid history,[2] the operative facts for this Motion are actually quite simple. This dispute arises because Cliffs expended escrowed funds in relation to the EPA-ordered Site remediation. Defendants, a defunct and bankrupt entity and its sole individual member, now seek to claw back those funds

---

[1] To properly object to Cliffs' request for expenditure, EGI's "first bite" at the apple would have been to timely object as required by Section 3(c) of the 2006 Escrow Agreement. EGI failed in its first attempt because its objection was untimely. EGI took a "second bite" via a follow-up objection letter which was also untimely. EGI's "third bite" came when it wrongfully initiated arbitration proceedings, which it is only entitled to do following a *timely* objection. Now, EGI submits the present Motion as its "fourth bite" to again improperly object to Cliffs' rightful expenditure.

[2] For Background on the Site, the required remediation, the EPA's involvement, and the relationships between EGI, Cliffs, and other parties who have potential liabilities related to the Site, please see Complaint, ¶¶ 1-27.

13072962.4

under the guise that the expenditure did not comport with contractual requirements. Defendants' true motives are evidenced in their arbitration demand's prayer for relief where they request that Cliffs forfeit any future claims to the escrow funds – allowing the funds to go back into Defendants' pockets at the expense of the environmental remediation efforts. The following pertinent facts demonstrate that Defendants' Motion is unfounded in fact, unsupported in law, and should be denied:

- On or about August 31, 2006, EGI entered into an escrow agreement (the "**2006 Escrow Agreement**"), whereby it would, among other things, deposit funds in escrow that were managed by an escrow agent beyond the control of EGI (Complaint, ¶¶ 28-34);

- Pursuant to certain requirements and conditions, Cliffs could request that the escrow agent expend funds from the escrow account to pay for Cliffs' remediation liabilities, which had been assumed and indemnified by EGI (Complaint, ¶¶ 34-35);

- In the ensuing years following execution of the 2006 Escrow Agreement, Mr. Fromelius and several Fromelius-related entities filed Chapter 11 petitions for relief, pursuant to which each remained a debtor in possession (Complaint, ¶ 37);

- As part of the bankruptcy cases, the debtors sought to enter into a settlement agreement with the Ann Marie Barry Trust, an entity affiliated with Mr. Fromelius's sister and which accused Mr. Fromelius of defaulting on a $4.5 million note, which settlement would subordinate a senior mortgage on the Site held by EGI to a junior mortgage held by the Barry Trust without providing EGI any consideration (Complaint, ¶¶ 38-39);

- Upon learning of the proposed insider settlement, Cliffs objected and commenced an involuntary Chapter 7 bankruptcy proceeding against EGI (Complaint, ¶ 40) to enforce EGI's senior mortgage against the Site to preserve any value for the remediation efforts;

- On or about August 31, 2017, to resolve the EGI involuntary bankruptcy case, Cliffs and EGI entered into a Settlement Agreement (the "**2017 Settlement Agreement**" and collectively, with the 2006 Escrow Agreement, the "**Settlement Agreements**") (Complaint, ¶ 40);

- The 2017 Settlement Agreement sought to update and restate the respective rights and obligations due and owing between EGI and Cliffs with respect to any Site and adjacent waterway environmental remediation responsibilities originally contemplated by the 2006 Escrow Agreement (Complaint, ¶ 42);

- Section 3 of the 2006 Escrow Agreement, which governed expenditures and dispute resolution procedures, was expressly revoked, deleted, and replaced ("**2017 Updated Section 3**") in the 2017 Settlement Agreement (Complaint, ¶ 35);

- Section (c) of the 2017 Updated Section 3 affords EGI a right to arbitrate the sole issue of whether the expenditure is consistent with the provisions of the 2017 Updated Section 3 (the "**Arbitration Clause**"), if EGI first made a timely objection. (Complaint, ¶ 49);

- Cliffs' notice to EGI regarding the expenditure of the remainder of the Escrowed Funds was effective as of May 14, 2021 (Complaint, ¶¶ 52-52);

- Under the 2017 Updated Section 3, EGI had 30 days, or until June 13, 2021, to object to the expenditure via written notice to Cliffs (Complaint, ¶ 56);

- EGI failed to timely object to the expenditure, as its untimely objection was not effective until June 16, 2021 (Complaint, ¶¶ 59-62);

- Defendants sent an additional untimely objection letter on July 7, 2021, demanding the return of the escrow funds (Complaint, ¶¶ 66-67);

4

- Despite having waived its ability to object to the expenditure and to file for arbitration, Defendants seek to improperly commence and pursue arbitration to compel Cliffs to return the expended escrow funds; and

- Because the Arbitration Clause has been waived, and is not Cliffs' exclusive remedy, Cliffs properly brought this action before the Court.

III. **LAW & ARGUMENT**

   A. **Defendants Failed to Meet the High Burden Required for Granting a Rule 12(b) Motion to Dismiss.**

"Rule 12(b)(6) motions are viewed with marked disfavor and should not be granted … unless it appears beyond doubt that the complaining party can prove no set of facts in support of his allegations which would entitle him to relief." *Armstrong v. Snyder*, 103 F.R.D. 96, 101 (E.D. Wis. 1984). When ruling on a Rule 12(b) motion to dismiss, "allegations in the plaintiffs' complaint must be accepted as true and the complaint dismissed only if it appears to a certainty that plaintiff is not entitled to relief under any state of facts which could be proved to support his claim." *Classon v. Shopko Stores, Inc.*, 435 F. Supp. 1186, 1187 (E.D. Wis. 1977). In addition to accepting plaintiff's allegations as true, a court must "draw all reasonable inferences in favor of the plaintiff." *Bonander v. Frank*, No. 11-CV-758-JPS, 2011 WL 4625662, at *3 (E.D. Wis. Oct. 3, 2011).

As an initial matter, Defendants fail to cite any legal standard for the relief they seek. While Defendants' Motion is titled as a "motion to dismiss", they do not bother to articulate any grounds under Rule 12 for why Cliffs' Complaint should be dismissed. Federal Rule of Civil Procedure 12(b) provides seven (7) defenses upon which a motion to dismiss may be based – "(1) lack of subject-matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; (4) insufficient process; (5) insufficient service of process; (6) failure to state a claim upon which

relief can be granted; and (7) failure to join a party under Rule 19." Defendants never allege upon which grounds they are entitled to have their Motion granted. Nor do Defendants ever allege that Cliffs' Complaint suffers from any of the above-mentioned defects. Defendants do not even offer a conclusory statement that they have met their applicable burden in moving to dismiss Cliffs' Complaint.

Further, "a motion to dismiss based on a contractual arbitration clause is appropriately 'conceptualized as an objection to venue, and hence properly raised under Rule 12(b).'" *Falkenberg JF LLC v. CB Tax Franchise Systems LP*, 637 F.3d 801, 808 (7th Cir. 2011), *quoting Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007). Defendants failed to present their Motion under Civil Rule 12(b)(3) and thus have waived their ability to dismiss for improper venue. Similarly, EGI has not presented a petition or motion under the Federal Arbitration Act or Wis. Stat. § 788. Lastly, Mr. Fromelius is not a party to the Settlement Agreements and does not have standing to enforce the Arbitration Clause.

In short, Defendants' Motion is legally baseless. Defendants bear the burden to prove why they are entitled to have their Motion granted and, as discussed more fully below, they have failed to do so. Additionally, Defendants' Motion relies upon documents and information outside the pleadings (*e.g.* the notice letter Cliffs sent to EGI and its alleged deficiency, *see* Motion, pgs. 7-8). These factual issues are extraneous to the Complaint, disputed, and must be viewed in a light most favorable to the non-moving party – Cliffs. Therefore, the Motion must be denied.

      **B.**    **This Declaratory Judgment Matter Is Not About Arbitrability**

Defendants allege that the relief Cliffs seeks in this lawsuit is within the exclusive purview of the Settlement Agreements' arbitration provision and that any disputes regarding

6

arbitrability should be decided by the arbitrator. This statement is incorrect and overreaching. Plaintiffs do not dispute the existence of the narrowly tailored Arbitration Clause contained in the 2017 Settlement Agreement. Defendants' reliance, however, on general pro-arbitration caselaw is misplaced. First, the Arbitration Clause is limited to a single narrow issue. Second, EGI waived its right to commence arbitration by failing to timely object to the disbursement – the precise topic sought to be addressed by Cliffs' Complaint. Third, as a dissolved entity, EGI lacks capacity to arbitrate a cause of action arising after its dissolution.

> 1. ***2017 Updated Section 3(C) Limits the Scope of Arbitration to a Single Issue***

Defendants mischaracterize the scope of the Arbitration Clause to be an all-encompassing agreement to arbitrate every dispute relating to the Settlement Agreements – "Disputes concerning [the 2017 Settlement Agreement and 2006 Escrow Agreement] are explicitly subject to an arbitration clause." (Motion, pg. 1). Tellingly, Defendants do not cite the actual language of the Arbitration Clause to support this contention; instead, Defendants refer to inapplicable case law discussing the enforceability of arbitration clauses generally. Defendants cannot rely upon these generalized legal principles to defeat the express language in the Settlement Agreements.

The Arbitration Clause expressly states:

> The arbitration award shall determine *only whether the expenditure in question is consistent with the provisions of (a) or (b) above*, provided that the arbitrator shall also, in the award, require that all the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party be paid by the non-prevailing party.

2017 Settlement Agreement, Updated Section 3 (emphasis added). The clear and unambiguous language of the Arbitration Clause limits the scope of arbitration to "only" a single issue: whether the expenditure in question is consistent with provisions 3(a) and 3(b) of the 2006

7

Escrow Agreement (as modified by the 2017 Settlement Agreement). The only other authority granted to the arbitrator is to award costs and attorneys' fees to the prevailing party. Thus, the issue of whether EGI timely objected to Cliffs' notice is not ripe for adjudication by the arbitrator.

Additionally, the Arbitration Clause states that it shall be "the sole remedy of EGI", not EGI and Cliffs. (2016 Updated Section 3(c)). Defendants' attempt to exaggerate its sole remedy into something more is a red-herring and should be ignored. Cliffs' declaratory claims against EGI are not subject to the Arbitration Clause and they never were intended to be arbitrable. Defendants ignore the express contractual language and by seeking dismissal of Cliffs' Complaint, they request that the Court rewrite the Settlement Agreements to their benefit. To the contrary, Cliffs' Complaint properly seeks a judicial determination that EGI's objection to the disbursement was untimely – a remedy not provided for through arbitration.

> **2. *EGI Simply Missed the Deadline to Object to the Disbursement and It Cannot Rewrite Contracts to Cover Its Error***
>
>> *a. EGI failed to timely object to Cliffs' expenditure request as required by 2017 Updated Section 3*

The 2006 Escrow Agreement is governed by Wisconsin law. (*See* 2006 Escrow Agreement, Section 10; Complaint, ¶ 36). Under Wisconsin law, "contracts must be construed as they are written." *Columbia Propane, L.P. v. Wisconsin Gas Co.*, 2003 WI 38, ¶ 12, 261 Wis. 2d 70, 85, 661 N.W.2d 776, 783. It is a long-standing tenant of Wisconsin contract law that courts "must apply the terms of the contract as written, and cannot rewrite the contract" to achieve a more equitable result for one party. *K. William Allen Enterprises, Inc. v. Safeway Indus., Inc.*, 2003 WI App 89, ¶ 9, 263 Wis. 2d 432, 662 N.W.2d 679 (citing *Meyer v. City of Amery*, 185 Wis.2d 537, 543-44, 518 N.W.2d 296 (Ct.App.1994)); *see also Keller v. Benning*, 224 Wis. 2d 936, 592 N.W.2d 319 (Ct. App. 1999) ("Where the terms of a contract are plain and

unambiguous, we will construe it as it stands.  It is not the role of the courts to rewrite contracts for the parties.") (internal citation omitted); *Menzel Enterprises, Inc. v. Rose Invs., LLC*, 2017 WI App 71, ¶ 27, 378 Wis. 2d 328, 904 N.W.2d 409 (refusing to grant an order pursuant to movant's "common sense conclusion" because to do so "would rewrite the contract, something [the court] may not do").

EGI failed to timely object to Cliffs' expenditure request as required by the Settlement Agreements.  2017 Updated Section 3(c) requires that "Cliffs shall also give EGI prompt notice of any such [expenditure] request."  After Cliffs made its expenditure request to the escrow agent, it followed the contractual requirements by giving EGI prompt written notice of said request.  Section 9 of the 2006 Escrow Agreement states that "[a]ny notice… shall become effective… (c) ***four business days after*** being deposited in the mails; with proper postage for first-class registered or certified mail prepaid." (*See* Escrow Agreement, Section 9) (emphasis added).  On May 10, 2021, Cliffs sent the Notice of Expenditure by certified mail, prepaid.  (Complaint, ¶ 52).  Thus, the Notice of Expenditure became effective on May 14, 2021 – which Defendants do not dispute.  (Complaint, ¶ 53; Motion, pg. 7).

2017 Updated Section 3(c) goes on to state, "EGI may initiate an objection to the expenditure, ***but only*** by giving written notice to Cliffs within thirty (30) days after notice from Cliffs of such request." (emphasis added).  EGI failed to object by the June 13th deadline.  EGI attempts to obscure this fact by massaging the timeline.  Specifically, EGI states that its objection was timely because it *received* Cliffs notice on May 14th and *sent* its objection on June 10th.  (Motion, pg. 7).  EGI uses two different measuring standards (*received* versus *sent*) to conceal the fact that its objection was untimely.  Not only is this position intellectually dishonest, it is contrary to the plain language of the Settlement Agreements.  There is a contractually

13072962.4

prescribed path for EGI to object and a contractually prescribed manner to calculate the timing of that objection. EGI simply dropped the ball. By their own admission, EGI sent its objection on June 10, 2021. (Motion, pg. 7). June 10, 2021 was a Thursday, making the effective date four business days later -- Wednesday, June 16, 2021. Because EGI's objection came after the June 13, 2021 deadline, it is untimely. This Court cannot rewrite the Settlement Agreements to relieve EGI from its own failure to timely object. *See, e.g.*, *Barrett Wrecking v. Redevel. Auth.*, 104 Wis. 2d 743, 314 N.W.2d 362 (Ct. App. 1981) (affirming trial court's holding that party waived its claim by failing to timely comply with the notice provisions of the contracts).

Defendants further attempt to distort the timeline by attacking the perceived adequacy of Cliffs' notice. Defendants' Motion complains that Cliffs notice "referenced several pages of information that were not included… provided no reason for the disbursement of funds, and did not explain to whom the funds were paid." (Motion, pg. 7). Importantly, none of this substantiating information was required by the Settlement Agreements. Cliffs followed its contractual obligations by providing prompt notice of the expenditure. Just because Defendants desired more information relating to the expenditure does not mean that Cliffs' notice was contractually insufficient. Yet, Defendants mischaracterize it as an "incomplete notice" to redirect attention from their own failure to timely object. All well-pleaded allegations in the Complaint must be accepted as true; therefore, for purposes of the Motion, Defendants had proper notice as of May 14, 2021.

Furthermore, EGI could have simply objected to Cliffs' notice citing the alleged lack of information, but they did not. Instead, EGI requested more information, which Cliffs promptly responded with on May 19, 2021. (Complaint, ¶ 57). Despite the fact that Cliffs gave proper notice on May 14th and EGI had all of the substantiating information it requested by May 19th,

Defendants offer no explanation regarding why they failed to timely object by June 13th. Defendants can blame no one but themselves for their untimely objection. Because EGI did not comply with the terms of Settlement Agreements, its ability to commence arbitration is contractually foreclosed. As is discussed in Section III.B.1 herein, because the Settlement Agreements narrowly limit the scope of the arbitrator's authority to a single issue, the question of whether EGI's objection was timely is one for this Court, and this Court alone, to decide.

> b. *EGI is a dissolved entity and lacks capacity to commence arbitration*

As of April 29, 2019, EGI is a dissolved entity and lacks capacity to commence arbitration. Prior to its involuntary dissolution by the Illinois Secretary of State, EGI was an Illinois limited liability company. (Complaint, ¶ 5). Under Illinois law, a dissolved company lacks the capacity to pursue claims that did not accrue until after dissolution. *See A Plus Janitorial Co. v. Grp. Fox, Inc.*, 2013 IL App (1st) 120245, ¶ 14, 988 N.E.2d 178, 181 (holding that a dissolved corporation lacked capacity to bring action against former employee regardless of whether the causes of action were based on rights that existed prior to dissolution where the causes of action did not accrue until *after* dissolution). EGI has been dissolved since April 29, 2019. Defendants' claim in arbitration did not accrue until Cliffs expended the escrow funds in May 2021 – over two years after EGI's dissolution. The fact that EGI had contractual rights to object to the expenditure prior to dissolution is irrelevant as the cause of action did not accrue until after EGI was dissolved. Even if EGI had capacity to commence arbitration, it nonetheless remains barred from doing so because a party in breach of contract has no ability to enforce its terms against another party to the contract. *Kosuga v. Kelly*, 257 F.2d 48, 56 (7th Cir. 1958), *aff'd*, 358 U.S. 516, 79 S. Ct. 429, 3 L. Ed. 2d 475 (1959) ("It is a well-established principle that

a party to a contract who commits the first breach of its terms cannot maintain an action for a subsequent breach by the other party.").

> **C. Only This Court Can Decide the Provisional Relief Requested in the Complaint**
>
> > **1. *2017 Updated Section 3(C) Expressly Reserves Cliffs' Right to Seek Provisional Remedies***

The Arbitration Clause states that it shall be "the sole remedy of EGI", not EGI and Cliffs. (2016 Updated Section 3(c)). Therefore, Cliffs' declaratory judgment claims against EGI as articulated in the Complaint are not subject to the Arbitration Clause. In fact, the Arbitration Clause expressly reserves Cliffs' right to seek provisional remedies – "this [Arbitration] clause ***shall not preclude*** parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction." (*see* 2017 Updated Section 3(c), emphasis added). Defendants' arguments again ignore the express contractual language and request that the Court rewrite the Settlement Agreements to their benefit. If the Court is not inclined to rule on the timeliness of EGI's objection, then in the alternative, as part of the relief Cliffs seeks through its Complaint -- assuming EGI has capacity to sue or be sued, or to arbitrate -- is to obtain an order compelling EGI to post bond or provide other assurance sufficient to demonstrate that EGI can satisfy an arbitration decision in Cliffs' favor. These are clearly provisional remedies in aid of arbitration expressly allowed by the Settlement Agreements and contemplated by the declaratory relief sought in the Complaint.

> > **2. *EGI Cannot Satisfy an Arbitrator's Award and Mr. Fromelius is Not a Party to the Settlement Agreements***

EGI admits in its response that it is a bankrupt entity. (Motion at pg. 2). As such, it does not have the financial ability to satisfy a potential arbitrator's award in favor of Cliffs. (*see* 2017 Updated Section 3(c), "the arbitrator shall also, in the award, require that all of the costs of the

arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party be paid by the non-prevailing party."). Furthermore, if EGI lacks capacity to commence arbitration, then neither of the Defendants can seek arbitration as Mr. Fromelius is not a party to the Settlement Agreements.

IV. **CONCLUSION**

Defendants failed to meet their burden in showing that there is no set of facts that would justify a court in granting Plaintiff's requested relief to allow funds allocated for environmental remediation of property in Milwaukee, Wisconsin to be diverted to Defendants' pockets. Conversely, Plaintiff has met its burden in stating its claims pursuant to Civ. R. 8. For the foregoing reasons, Defendants' Motion to Dismiss must be denied and this case should be allowed to be adjudicated on the merits.

Respectfully submitted,

*/s/Christopher B. Wick*
Andrew H. Perellis (IL Bar 6181778)
aperellis@perellislaw.com

PERELLIS & ASSOCIATES, LLC
2549 Waukegan Road, Suite 10034
Bannockburn, Illinois 60015
Phone: (312) 554-5715

and

Eric B. Levasseur (OH Bar 0075353)
eblevasseur@hahnlaw.com
Christopher B. Wick (OH Bar 0073126)
cwick@hahnlaw.com

HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Phone: (216) 621-0150
Facsimile: (216) 241-2824

13072962.4

*Attorneys for Plaintiff*
*Cliffs Mining Company*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing *Cliffs Mining Company's Response in Opposition to Defendant's Motion to Dismiss* was electronically filed this 25th day of October, 2021. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

    */s/ Christopher B. Wick*
    *One of the Attorneys for Plaintiff*
    *Cliffs Mining Company*